**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gilberto URESTI–HERNANDEZ, a/k/a**
**Jesus Jose Olivas–Griego,**
**Defendant–Appellant.**

No. 91–2207.

United States Court of Appeals,
Tenth Circuit.

July 2, 1992.

James Tierney, Asst. U.S. Atty., Albuquerque, N.M. (Don J. Svet, U.S. Atty., Albuquerque, N.M., Charles L. Barth, Asst. U.S. Atty., Las Cruces, N.M., with him on the brief), for plaintiff-appellee.

William D. Fry (Jana M. Miner, Asst. Federal Public Defender, with him on the briefs), Las Cruces, N.M., for defendant-appellant.

Before BRORBY and EBEL, Circuit Judges, and VAN SICKLE,* District Judge.

---

\* The Honorable Bruce M. Van Sickle, Senior District Judge for the District of North Dakota, sitting by designation.

BRORBY, Circuit Judge.

Appellant Gilberto Uresti–Hernandez (Uresti) was charged by indictment with three counts of transportation of illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(B) and aiding and abetting in violation of 18 U.S.C. § 2. On April 25, 1991, a jury convicted Mr. Uresti of all three counts. The district court sentenced Mr. Uresti to three twenty-seven month terms on August 31, 1991. The imprisonment terms are to run concurrently and will be followed by three two-year supervised release terms, also to run concurrently. Mr. Uresti appeals his conviction asserting (1) insufficient evidence for a jury to find him guilty, beyond a reasonable doubt, of illegal transportation of aliens; and (2) the trial court erred by giving a "deliberate indifference" jury instruction. Mr. Uresti also appeals his sentence claiming the trial court employed an inappropriate guideline imprisonment range. We affirm both the conviction and the sentence.

## FACTS

At approximately 4:00 a.m. on January 29, 1991, Sergeant Robert Bird of the Carlsbad, New Mexico Police Department stopped a vehicle which had run a red light. Seven people were seated in the car. Mr. Uresti was in the right front seat and co-defendant Gregorio Lopez–Marquez (Lopez) was driving. Because of the number of non-English speaking people in the car, Sgt. Bird requested the assistance of the United States Border Patrol.

Border Patrol Agents Steven Gardner and David Rogers arrived at the scene and conducted citizenship checks of the vehicle's occupants. These checks indicated six of the occupants were illegal aliens from the Republic of Mexico. Mr. Uresti, however, produced a birth certificate indicating he was born in Texas.

Four of the vehicle's occupants testified at Mr. Uresti's trial. Javier Hernandez–Garcia (Hernandez), a citizen of the Republic of Mexico, testified he and Mario Alvarez–Cortez crossed the river from Mexico into the United States. They then went to a house where they were picked up in a car driven by Mr. Lopez with Mr. Uresti riding in the passenger seat. When they neared the Border Patrol checkpoint, Mr. Lopez ordered them out of the car and led them on foot through the desert, around the checkpoint and back to the highway where Mr. Uresti was waiting for them in the car. Mr. Hernandez also testified he paid Mr. Lopez $250.

Mario Alvarez–Cortez (Alvarez), also a citizen of the Republic of Mexico, testified he met with Mr. Lopez in Juarez, Mexico to make arrangements to help him cross into the United States. He identified Mr. Uresti as having been present at one of these meetings but stated he made all of the arrangements with Mr. Lopez. He indicated Mr. Lopez helped him cross a fence into the United States and directed him to a store where they were picked up by Mr. Uresti. Mr. Alvarez corroborated Mr. Hernandez's testimony that Mr. Lopez walked the group of aliens around the checkpoint and that Mr. Uresti drove through the checkpoint.

Felipe Garcia–Fabela (Garcia), a third passenger without proper documentation, testified he crossed from Mexico into the United States through a fence. He then met with two other men at a house in Texas. Mr. Garcia initially testified Mr. Uresti walked him around the checkpoint so that they would not be inspected by the immigration authorities. However, he subsequently changed his testimony, stating that Mr. Uresti was actually the individual who waited in the car while they walked through the desert. Mr. Garcia explained his confusion by stating Mr. Lopez and Mr. Uresti look alike. Additionally, Mr. Garcia testified he paid Mr. Uresti $750 to take him to Albuquerque.

Finally, testifying on behalf of the defense, Mr. Lopez claimed he had recruited Mr. Uresti to go to Albuquerque with him, but that he never told Mr. Uresti about his intent to transport illegal aliens from Mexico to Albuquerque.[1] Mr Lopez stated Mr.

---

1. Mr. Lopez entered a plea of guilty to the illegal transportation charges prior to testifying

Uresti met the illegal aliens at the house where Mr. Lopez picked them up. Mr. Lopez further testified that Mr. Uresti first discovered the passengers were illegal aliens when they approached the Border Patrol checkpoint. Mr. Lopez claimed Mr. Uresti originally opposed the plan but ultimately drove the vehicle through the checkpoint and picked the group up on the other side. On cross-examination, Mr. Lopez admitted Mr. Uresti was the only person in the vehicle who had documents allowing him to cross through the checkpoint.

## DISCUSSION

*Sufficiency of Evidence*

■ The standard by which we review Mr. Uresti's insufficient evidence claim is well established: We review all the evidence, direct and circumstantial, as well as all reasonable inferences drawn therefrom, in the light most favorable to the prosecution. *United States v. Levario*, 877 F.2d 1483, 1485 (10th Cir.1989). "[W]e must affirm the judgment of conviction if there is record evidence which would allow a rational trier of fact to find the defendant guilty of the crime charged in the indictment beyond a reasonable doubt." *United States v. Young*, 862 F.2d 815, 818 (10th Cir.1988). Applying this standard, we hold the evidence was more than sufficient to convict Mr. Uresti of illegal transportation of aliens.

Title 8, § 1324(a)(1)(B) of the United States Code imposes criminal penalties on any person who

> knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law.

Title 18, § 2 of the United States Code provides that whoever aids or abets in the commission of a crime is punishable as a principal. Aiding and abetting requires

only that a defendant assist the perpetrator of a crime—that he " 'associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seeks by his action to make it succeed.' " *United States v. Harris*, 441 F.2d 1333, 1336 (10th Cir.1971) (quoting *Roth v. United States*, 339 F.2d 863, 865 (10th Cir.1964)). "Thus, to be guilty of [aiding and abetting] a crime, one does not have to have an active stake in the outcome of the crime, but merely to participate therein." *Id.* at 1336.

■ Here, all three material witnesses testified they were transported in a vehicle by both Mr. Uresti and Mr. Lopez to a point short of the Border Patrol checkpoint where they were ordered out of the car by Mr. Lopez. Mr. Lopez led the aliens around the checkpoint on foot while Mr. Uresti drove the vehicle through the checkpoint. Mr. Uresti picked up the group once he had cleared the checkpoint. Additionally, Mr. Alvarez testified that while he had arranged transportation with Mr. Lopez, he recalled seeing Mr. Uresti with Mr. Lopez during one of their meetings. Mr. Garcia testified that he paid Mr. Uresti for transporting him into the United States. Even if the jury accepted Mr. Lopez's testimony that Mr. Uresti did not know of the plan to transport illegal aliens until they neared the checkpoint, the actions of Mr. Uresti in driving the vehicle through the checkpoint and then picking up the group on the other side is sufficient for a jury to infer Mr. Uresti's actions were more than incidental to the illegal aliens' presence in the United States.

■ In essence, Mr. Uresti asks us to reverse his conviction because Mr. Lopez's testimony was more credible than Mr. Garcia's. Credibility determinations are for the jury, not the appellate court. *United States v. LeRoy*, 944 F.2d 787, 790 (10th Cir.1991). Viewing the evidence and inferences in the light most favorable to the prosecution, sufficient evidence existed for

---

in Mr. Uresti's trial. However, no plea agreements or promises were made in return for his

testimony.

the jury to find Mr. Uresti guilty, beyond a reasonable doubt, of transporting illegal aliens and aiding and abetting.

### Jury Instruction

The trial court, at the government's request, gave the jury the following instruction:

> The phrase "reckless disregard of the fact," as it has been used from time to time in these instructions, means deliberate indifference to facts which, if considered and weighed in a reasonable manner, indicate the highest probability that the alleged aliens were in fact aliens and were in the United States unlawfully.

Although Mr. Uresti did not object to this instruction at trial, he now characterizes it as a "deliberate ignorance" instruction which impermissibly created a presumption of actual knowledge, thereby shifting the burden to him to prove his innocence. He asserts the giving of this instruction resulted in prejudicial error as "[t]here is no way to know whether the jury's verdict of guilty was premised upon a finding of direct knowledge of the illegal status of the aliens or whether the 'deliberate indifference' instruction led to the verdict."

Where, as here, no objection was made to the giving of a jury instruction or its content, we are concerned only with whether the giving of the instruction constituted "plain error." " 'Plain error,' in this context, is error that 'affects the defendant's fundamental right to a fair and impartial trial.' " *United States v. Hernandez–Garcia*, 901 F.2d 875, 876 (10th Cir.) (quoting *Burroughs v. United States*, 365 F.2d 431 (10th Cir.1966)), *cert. denied*, — U.S. —,

111 S.Ct. 125, 112 L.Ed.2d 94 (1990). We find no such error in the present record.

■ First, Mr. Uresti mischaracterizes the court's instruction as one of "deliberate ignorance" so that he might fashion an appealable issue relying on this court's decision in *United States v. de Francisco–Lopez*, 939 F.2d 1405 (10th Cir.1991).[2] A "deliberate ignorance" instruction like that given in *de Francisco–Lopez* gives the jury a method by which to evaluate circumstantial evidence that the person against whom it is employed has actual knowledge of a fact in issue. In other words, the government is able to prove a defendant had actual knowledge of a material and operative fact by proving deliberate acts committed by the defendant from which actual knowledge can be logically inferred. *United States v. Ochoa–Fabian*, 935 F.2d 1139, 1141–42 (10th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).

■ The instruction given in the instant case is distinguishable from the typical "deliberate ignorance" instruction. Here, the term "reckless disregard of the fact" is an element of the crime charged.[3] As such, the narrow instruction specifically defining "reckless disregard of the fact" was given properly as an aid to the jury to understand that element of the offense. Moreover, the "reckless disregard of the fact" instruction, evaluated alongside the other instructions, fairly and correctly stated the applicable law, and the instructions as a whole provided the jury an ample understanding of the issues and applicable standards. *See United States v. Fingado*, 934 F.2d 1163, 1167 (10th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 320, 116 L.Ed.2d 262 (1991).

---

**2.** The court in *de Francisco–Lopez*, a cocaine distribution case, held that a "deliberate ignorance" instruction is only appropriate on the rare occasion when the prosecution can present direct or circumstantial evidence to show the defendant deliberately avoided knowledge. *Id.* at 1409–10. Moreover, the court emphasized that "the same fact or facts cannot be used to prove both actual knowledge *and* deliberate indifference because the two are mutually exclusive concepts." *Id.* at 1410 (emphasis in original).

**3.** Recall, 8 U.S.C. § 1324(a)(1)(B) criminalizes the conduct of any person who

> knowing or in *reckless disregard of the fact* that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law.

(Emphasis added).

Second, notwithstanding any similarity between the "reckless disregard of the fact" instruction and the more questionable "deliberate ignorance" instruction, the direct evidence of Mr. Uresti's actual knowledge of the aliens' illegal status was overwhelming. Even Mr. Lopez testified Mr. Uresti knew the passengers were illegally entering the United States prior to when he crossed the checkpoint and waited to pick them up on the other side. We conclude the challenged instruction in no way affected the fairness of Mr. Uresti's trial. Thus, Mr. Uresti's claim of plain error is without merit.

*Sentencing*

Mr. Uresti claims the trial court erred by finding he was not a minor participant pursuant to U.S.S.G. § 3B1.2(b) and by failing to reduce his offense conduct because the offense was not committed for profit pursuant to U.S.S.G. § 2L1.1(b)(1). The base offense level for transporting illegal aliens in this case is nine. *See* U.S.S.G. § 2L1.1(a)(2). However, if a defendant commits an offense other than for profit, the base offense level is decreased by three levels. *Id.* at § 2L1.1(b)(1). Additionally, a two-level reduction is accorded to "minor" participants. *Id.* § 3B1.2(b). Thus, Mr. Uresti claims his total adjusted offense level should have been four, and not nine.

 At the sentencing hearing, the trial court explicitly found that Mr. Uresti was not a minor participant and that he transported illegal aliens for profit.[4] The trial court's application of the sentencing guidelines to the facts of Mr. Uresti's case is entitled to due deference and we will not reverse the trial court's factual findings unless clearly erroneous. *United States v. Urbanek*, 930 F.2d 1512, 1514 (10th Cir. 1991). Moreover, the burden of showing entitlement to a downward adjustment falls on Mr. Uresti by a preponderance of the evidence. *United States v. Maldonado–Campos*, 920 F.2d 714, 717 (10th Cir.1990).

 We hold the district court was not clearly erroneous as ample evidence exists in the record to support its findings. Re-

call, all four witnesses testified Mr. Uresti completed the necessary tasks of driving the vehicle through the checkpoint and stopping to pick them up on the other side. Furthermore, Mr. Garcia testified he paid Mr. Uresti $750. In light of this evidence, we find no error in the district court's refusal to make downward adjustments under U.S.S.G. § 3B1.2(b) and § 2L1.1(b)(1).

The conviction and sentence are AFFIRMED.

---

4. The trial court adopted the factual findings of the Presentence report.