**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Juan BUENROSTRO–TORRES,**
**Defendant–Appellant.**

**No. 93–50383.**

United States Court of Appeals,
Ninth Circuit.

Submitted April 8, 1994 *.

Decided May 24, 1994.

Norman W. De Carteret, Sherman Oaks, CA, for defendant-appellant.

---

* The panel unanimously found this case suitable for decision without oral argument. Fed.

R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Daniel P. Collins, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: BROWNING, PREGERSON and BRUNETTI, Circuit Judges.

PER CURIAM:

## I. OVERVIEW

Juan Buenrostro–Torres appeals his sentence imposed after he pleaded guilty to four counts of possession of false immigration documents and document-making equipment with intent to produce and transfer the documents, and possession of counterfeit alien registration receipt cards, in violation of 18 U.S.C. §§ 1028(a)(3), 1028(a)(5) & 1546(a). We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We remand for re-sentencing.

## II. BACKGROUND

In September of 1992, a confidential Immigration and Naturalization Service ("INS") informant, outfitted with wire equipment, approached two men to buy false immigration documents. The two men, followed by INS agents, left the confidential informant waiting on the sidewalk and drove to Mr. Buenrostro–Torres's house to get the documents. The agents watched the two men talk to Buenrostro–Torres and get back in their car, and then they followed the men back to where the confidential informant was waiting. The men told the confidential informant that they needed money up front, and the informant gave them $100. The men took the money and went back to Buenrostro–Torres's house, again followed by INS agents. They went into the house, and when they came out they were carrying a bag that was later found to contain blank immigration and social security cards with Buenrostro–Torres's fingerprints on them. They then brought the bag back to the confidential informant. The contents of this bag formed the basis for Count One of the indictment.

A few weeks later, in a lawful search of Buenrostro–Torres's house and yard, agents found a plastic bag filled with false documents, plastic laminates, a laminator, a typewriter, and an ink pad. The alien receipt cards found in the plastic bag were an updated version of those found in the bag purchased earlier by the confidential informant. These items formed the basis for Counts Two through Four of the indictment. In January of 1993, Buenrostro–Torres pleaded guilty, without a plea bargain, to all four counts of the indictment. At his presentencing interview, Buenrostro–Torres claimed that he had not received any money for the documents. He was sentenced to fourteen months in prison, plus three years of supervised release.

He makes two claims of error. First, he contends that the district court erred in failing to grant him a three-level reduction in his offense level under the Sentencing Guidelines because he did not possess the false documents for profit. Second, he claims that the district court improperly increased his overall offense level under the guidelines by separating Count One from Counts Two through Four instead of grouping all of the counts together.

## III. STANDARD OF REVIEW

We review de novo the district court's interpretation and application of the Sentencing Guidelines. *United States v. Blaize,* 959 F.2d 850, 851 (9th Cir.) (interpretation), *cert. denied,* —— U.S. ——, 112 S.Ct. 2954, 119 L.Ed.2d 576 (1992); *United States v. Fagan,* 996 F.2d 1009, 1017 (9th Cir.1993) (application). Factual findings by the district court judge for the purpose of sentencing are reviewed for clear error. *United States v. Reese,* 2 F.3d 870, 893 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 928, 127 L.Ed.2d 220 (1994).

## IV. INTENDED FOR PROFIT

Trafficking in false immigration documents is a base level nine offense under the Sentencing Guidelines. U.S.S.G. § 2L2.1(a). § 2L2.1(b)(1) of the Guidelines provides for a

three-level decrease in a defendant's offense level if he did not act "for profit."[1]

■ Buenrostro–Torres contends that he should have received the reduction because there was no evidence that he actually received any money for the materials he gave to the men at his house. In his view: (1) the two men who spoke to the confidential informant and who received the false documents from Buenrostro–Torres could simply have pocketed the $100 they received from the confidential informant; and (2) there is no evidence that the materials seized when his house was searched were intended to be used for profit. We will not disturb these district court factual findings absent clear error, *Reese,* 2 F.3d at 893, and we find no such error.

### (1)

*Evidence that Buenrostro–Torres gave the two men the false documents in return for the $100:* Buenrostro–Torres does not contest the government's evidence that the confidential informant asked the two men for false documents, and that the two men then went directly to Buenrostro–Torres's house. After talking to Buenrostro–Torres at his house the two men returned to tell the confidential informant that they needed the money up-front. Then, once they got the money, they went back to Buenrostro–Torres's house to pick up the documents, and returned once again to give the documents to the confiden-

tial informant. The most plausible explanation by far for these uncontroverted facts is that the two men gave the money to Buenrostro–Torres in return for the documents.

### (2)

*Evidence that the materials found in Buenrostro–Torres's house were intended for profit:* The sheer quantity of materials seized at Buenrostro–Torres's house supports the district court's finding that these materials were intended for profit. In addition, some of the documents were partially filled out, which suggests an ongoing enterprise. Finally, the fact that the INS discovered the materials because of the earlier sale to the confidential informant suggests that the documents were being produced and stored for other sales. The only evidence that the documents were *not* for profit was Buenrostro–Torres's own statement at his presentencing interview. It was not clearly erroneous for the district court to discount Buenrostro–Torres's testimony and therefore to refuse to grant the offense level reduction.[2]

## V. FAILURE TO GROUP COUNT ONE WITH COUNTS TWO THROUGH FOUR

■ Under § 3D1.2(d), the district court must group all offenses that are covered by § 2F1.1.[3] The district court calculated defendant's sentence for the offenses charged

1. The government accurately points out that Buenrostro–Torres is mistaken about which counts are subject to his "for profit" argument. The first three counts of the indictment charged him with violations of 18 U.S.C. § 1028. As of the time of Buenrostro–Torres's offense, § 2L2.1(b)(1) did not apply to violations of 18 U.S.C. § 1028. Therefore, the district court applied U.S.S.G. § 2F1.1 rather than § 2L2.1(b)(1). Only Count Four was calculated based on § 2L2.1(b)(1). This does not effect our analysis as we reject Buenrostro–Torres's claim regarding all counts.

2. Buenrostro–Torres cites *United States v. Uresti–Hernandez,* 968 F.2d 1042, 1047 (10th Cir.1992), apparently for the proposition that more evidence of profit motive is required than was available here. But *Uresti–Hernandez* is of absolutely no help to him. In that case, the 10th Circuit *upheld* a district court holding that the defendant had a profit motive where the evidence on that point was sufficient. *Id.* It therefore in no way

defined any kind of minimum evidence requirement.

3. Section 3D1.2(d) provides in relevant part:
   All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:

   .     .     .     .     .

   (d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.
   Offenses covered by the following guidelines are to be grouped under this subsection:

   .     .     .     .     .

   §§ 2F1.1, 2F1.2;

   .     .     .     .     .

   For multiple counts of offenses that are not listed, grouping under this subsection may or

in Counts One through Three under § 2F1.1, which applies to crimes involving fraud and specifically to violations of 18 U.S.C. § 1028. Accordingly, § 3D1.2(d) required the district court to group Count One with Counts Two and Three.[4]

The government responds that § 3D1.2(d) is inapplicable since "this is not a case in which 'the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm.'" Appellee's Brief at 32 (quoting § 3D1.2(d)). This argument is contrary to the clear language of § 3D1.2(d) in two respects.

First, the language cited by the government comes from the first clause of § 3D1.2(d) which states a general principle. The remainder of the subsection implements this principle by listing the particular guidelines that cover the offenses that are to be grouped, and by providing that offenses covered by unlisted guidelines are to be analyzed on a case-by-case basis. If the offenses at issue are covered by one of the listed guidelines we do not analyze the facts of the particular case. Here, the offenses in Counts One through Three are covered by § 2F1.1; Congress has determined that such offenses are categorically groupable under § 3D1.2(d).

Second, even under the case-by-case approach § 3D1.2(d) mandates that the counts be grouped. The government omits an important sentence from the first clause of § 3D1.2(d), which provides in full:

> When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, *or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.*

U.S.S.G. § 3D1.2(d) (emphasis added). This last sentence indicates that § 3D1.2(d) requires grouping when (1) the offense behavior is continuous in nature and (2) the offense guideline is written to cover such behavior. Because Buenrostro–Torres's offense behavior involved forging identification documents over a period of time, it was continuous. And the applicable version of § 2F1.1 was clearly written to cover his offense behavior, as indicated by the commentary notes which not only referenced 18 U.S.C. § 1028, but also referenced the enhanced penalties of § 1028 for possession of document production equipment or more than five false documents.[5] Accordingly, the district court should have grouped all of the counts together.

**REVERSED AND REMANDED.**

---

may not be appropriate; a case-by-case determination must be made based upon the facts of the case and the applicable guidelines (including *specific offense characteristics and other adjustments*) used to determine the offense level.

U.S.S.G. § 3D1.2(d).

**4.** The government concedes that Count Four should be grouped with Counts Two and Three. On appeal, *Buenrostro–Torres* contends that the counts should be grouped under U.S.S.G. §§ 3D1.2(a) and 3D1.2(b) rather than under § 3D1.2(d). Nevertheless, the record permits us to address whether they should have been grouped under § 3D1.2(d). The Presentence Report grouped the first three counts under § 3D1.2(d), and the government objected to this aspect of the Presentence Report below. In addition, the government addressed § 3D1.2(d) in its brief on this appeal.

**5.** Commentary note 11 provides:

Offenses involving fraudulent identification documents and access devices, in violation of 18 U.S.C. §§ 1028 and 1029, are also covered by this guideline. The statutes provide for increased maximum terms of imprisonment for the use or possession of device-making equipment and the production or transfer of more than five identification documents or fifteen access devices. The court may find it appropriate to enhance the sentence for violations of these statutes in a manner similar to the treatment of analogous counterfeiting offenses under Part B of this Chapter.

U.S.S.G. § 2F1.1, comment. (n.11) (1991). As the commentary note indicates, the statute that defendant violated provides for a fine of not more than $25,000 or imprisonment of not more than 5 years, or both, if the offense involves a document that appears to be issued under the authority of the United States, the production of more than 5 identification documents, or the possession of a document-making implement. 18 U.S.C. § 1028(b).