46 F.3d 1147
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jesse Randolph HENSLEY, Defendant-Appellant.
 No. 94-30148.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted: Jan. 11, 1995.
Decided: Jan. 30, 1995.
 
 Before: PREGERSON and TROTT, Circuit Judges, and FITZGERALD,* District Judge.
 MEMORANDUM**
 Jesse Randolph Hensley appeals his sentence imposed under the Sentencing Guidelines and the Armed Career Criminal Act (ACCA), 18 U.S.C. Sec. 924(e), following his guilty plea conviction for being a felon in possession of a firearm in violation of 18 U.S.C. Sec. 922(g)(1). We have jurisdiction over this timely appeal under 18 U.S.C. Sec. 3742 and 28 U.S.C. Sec. 1291. We affirm.
 I. BACKGROUND
 On June 6, 1993, the Salem, Oregon Police Department received an anonymous phone call stating that Hensley, who had an outstanding felony arrest warrant for a parole violation, was at a motel in Salem. Salem police went to the motel and surveilled the room where Hensley was staying. The police then stopped Trina Truitt, another occupant of Hensley's room, as she left the motel room. Truitt told the police that Hensley was in the room and armed with a handgun. Truitt also told the police that she was concerned for the safety of her friend, Rhonda Clements, who was still in the motel room with Hensley. As the police readied their response, Hensley exited the motel room and left the scene on his motorcycle, without being apprehended.
 Four days later, a Salem police officer spotted Hensley on his motorcycle and attempted to stop him. Hensley fled and led the officer on a high-speed chase. After Hensley crashed his motorcycle, he fled on foot, until the police officer caught him.
 The police officer searched Hensley's person and discovered a loaded .38 caliber semi-automatic pistol. In addition, the officer found 20.3 grams of methamphetamine, a Mead notebook containing what the officer believed to be drug transaction records, a bag of syringes, a spoon, and a set of electronic scales. Hensley asserted that he had borrowed the gun from a friend about a week earlier and that it was loaded when he borrowed it. Hensley admitted buying an ounce of methamphetamine a week earlier for $900, but denied selling the drug.
 Hensley agreed to plead guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. Sec. 922(g)(1). In Hensley's pre-sentence report (PSR), the Probation Office recommended sentencing him as an armed career criminal, under U.S.S.G. Sec. 4B1.4 and 18 U.S.C. Sec. 924(e). The PSR also recommended that the court enhance Hensley's offense level under part (3)(A) of U.S.S.G. Sec. 4B1.4(b) for possessing a firearm during a controlled substance offense.
 At the time of this arrest, Hensley had three prior adult convictions in Oregon court. One conviction was for second-degree burglary, and the other two convictions were for first-degree burglary. The district court found that these crimes constituted the requisite three "violent felonies" necessary to find Hensley an armed career criminal under 18 U.S.C. Sec. 924(e).
 Prior to his sentencing, Hensley raised a general argument that Oregon's second-degree burglary statute does not fit the requirements of a violent felony as set forth in the definitional section of 18 U.S.C. Sec. 924(e). Hensley also objected to the PSR's finding that at the time of his arrest, he possessed the firearm in connection with the crime of possession with intent to distribute methamphetamine.
 The district court accepted the recommendations of the PSR. The court found that Hensley's criminal record contained three prior violent felonies, and thus it applied the ACCA to him. In addition, the court found that Hensley possessed the firearm "in connection with a controlled substance offense," and therefore adopted the PSR's recommended offense level of 34, under U.S.S.G. Sec. 4B1.4(b)(3)(A). The court then imposed a sentence of 188 months' imprisonment to be followed by five years of supervised release.
 II. ANALYSIS
 On appeal, Hensley makes two arguments. First, Hensley asserts that the district court incorrectly ruled that his Oregon conviction for second-degree burglary was a violent felony under the ACCA. In addition, Hensley contends that the district court erred when it found that he possessed a firearm in connection with a controlled substance offense.
 A. Second-Degree Burglary Conviction
 We review de novo the district court's interpretation of the ACCA. United States v. O'Neal, 937 F.2d 1369, 1371 (9th Cir. 1991).
 Under the ACCA, a felon convicted of possessing a firearm who has three previous convictions "for a violent felony or a serious drug offense" must receive a minimum sentence of fifteen years' imprisonment. 18 U.S.C. Sec. 924(e). Part (2)(B) of Sec. 924(e) defines "violent felony" as:
 any crime punishable by imprisonment for a term exceeding one year ... that--(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another; ....
 18 U.S.C. Sec. 924(e)(2)(B) (emphasis added).
 In Taylor v. United States, 495 U.S. 575 (1990), the Supreme Court confronted the issue of how to define "burglary" under the "violent felony" standard of Sec. 924(e). After an extensive review of the ACCA's legislative history, the Court adopted a "generic" definition of burglary, stating:
 a person has been convicted of burglary for purposes of a Sec. 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.
 495 U.S. at 599.
 Hensley argues that his conviction under Oregon's second-degree burglary statute exceeds the "generic" definition of second-degree burglary under Taylor, and asserts that therefore his second-degree burglary conviction thus cannot count as a predicate felony towards an armed career criminal enhancement. To adopt this argument, however, we would have to overturn our holding in United States v. Cunningham, 911 F.2d 361 (9th Cir. 1990), cert. denied, 498 U.S. 1103 (1991).
 In Cunningham, we examined Oregon's definition of second-degree burglary in light of the Supreme's ruling in Taylor, and found that Oregon defines second-degree burglary in a "virtually identical fashion" to Taylor's "generic" definition. 911 F.2d at 363. Under Oregon law a person commits burglary in the second degree if he or she "enters or remains unlawfully in a building with intent to commit a crime therein." Or. Rev. Stat. Sec. 164.215(1).
 Despite the clear holding of Cunningham, Hensley makes three separate arguments urging that Oregon's second-degree burglary statute does not meet the Taylor standard. First, Hensley contends that because Oregon sentencing guidelines do not classify second-degree burglary as a "person felony," due process requires that the offense not be violent felony under federal law.[1] Hensley does not supply us with any case law in support of this theory, and he appears to have dropped this argument in his reply brief (although he expands greatly on the other arguments in the reply brief). We find this argument untenable in light of the Supreme Court's language in Taylor that we are to look only to the elements of the crime, regardless of "the exact definition or label" assigned to it by the state. Taylor, 495 U.S. at 599.
 Hensley makes two other arguments as to why the Oregon second-degree burglary statute does not meet the Taylor "generic" burglary definition. First, Hensley asserts that the Oregon second-degree burglary statute is overbroad under Taylor because Oregon case law has defined "building" under this statute more broadly than is permissible under Taylor. Second, Hensley contends that the Oregon courts' interpretation of the "enter or remain unlawfully" language in the statute violates Taylor.
 Hensley raised neither of these arguments before the district court. Therefore these arguments are waived on appeal. See Intl. Union of Bricklayers & Allied Craftsman v. Martin Jaska, Inc., 752 F.2d 1401, 1404 (9th Cir. 1985) ("[W]e will not ... review an issue not raised below unless necessary to prevent manifest injustice").
 In Quintero v. United States, 33 F.3d 1133, 1136 n.3 (9th Cir. 1994), we found manifest injustice and thus heard an argument raised for the first time on appeal. In Quintero, the defendant's counsel below was allegedly paid for by the drug supplier so that the drug supplier would evade prosecution. On appeal from a denial of his motion to vacate his sentence based on ineffective assistance of counsel, Quintero argued for the first time that his counsel's urging him to reject a plea agreement was evidence of a conflict of interest. We found in Quintero that the allegations of injustice were so forceful that they overrode the fact that he had not raised the issue below. Id.
 
 
 1
 We do not find manifest injustice here. We have already issued an opinion that squarely contradicts the arguments newly raised by Hensley. See Cunningham, 911 F.2d 361. Moreover, even assuming arguendo that we found the Oregon second-degree burglary statute overbroad under Taylor, it is very likely that Hensley's sentence enhancement would nevertheless stand under the alternative "particularized" analysis allowed under Taylor.
 
 
 2
 Taylor stated that even in cases where the statute is "non-generic" or overbroad, sentence enhancement can still be sought where the defendant was actually charged and convicted of all the necessary elements of a generic burglary. Taylor, 495 U.S. at 602; see also O'Neal, 937 F.2d at 1373 (explaining that portion of the Taylor opinion).
 
 
 3
 In this case, the PSR alleged that the facts surrounding Hensley's second-degree burglary conviction were that he admitted breaking into a residence through a window and stealing a number of items. (PSR at 7, p 33) Based on the allegations in the PSR, Hensley's conviction for second-degree burglary meets the requirements of Taylor--because the PSR specifically alleges unlawful entry into a residence--even if the Oregon statute otherwise overbroadly defines "building" to include things such as booths or aircraft. See Or. Rev. Stat. 164.215(1) (defining "building" for the purposes of second-degree burglary); Red Br. at 7. Further, Hensley did not object to the PSR's description of the circumstances of his second-degree burglary conviction as involving a residence, nor does he presently allege that the PSR's characterization is incorrect.
 
 
 4
 In sum, we believe that our ruling in Cunningham, 911 F.2d 361, that Oregon's second-degree burglary statute is a "violent felony" under the ACCA, clearly defeats Hensley's claim. Accordingly, the district court did not err in counting his second-degree burglary conviction as a violent felony under the Act.
 
 
 5
 B. Possession of a Firearm in Connection with a Controlled Substance Offense
 
 
 6
 The district court's finding that a defendant possessed a firearm during the commission of a controlled substance offense is a factual finding that we review for clear error. See United States v. Buenrostro-Torres, 24 F.3d 1173, 1174 (9th Cir. 1994) (factual findings in applying the Sentencing Guidelines are reviewed for clear error).
 
 
 7
 Hensley argues that the government failed to meet its burden of proof on whether he possessed the firearm in connection with a controlled substance offense under U.S.S.G. Sec. 4B1.4(b)(3)(A). More specifically, Hensley asserts that the district court clearly erred when it relied only on assertions in the PSR to find that at the time of his arrest, Hensley possessed methamphetamine with the intent to distribute.
 
 
 8
 The government acknowledges that it had to prove by a preponderance of the evidence its theory that Hensley possessed the drug with the intent to distribute it. United States v. Restrepo, 946 F.2d 654, 665 (9th Cir. 1991) (en banc), cert. denied, 112 S. Ct. 1564 (1992) (preponderance standard of proof applies for factors enhancing a sentence under the Sentencing Guidelines). But the government argues that it met that burden even without presenting anything other than the PSR, because Hensley accepted almost all of the facts contained in the PSR.
 
 
 9
 We agree with the government. Hensley's argument must fail because he made only limited objections to the allegations in the PSR which supported the court's finding that he possessed the methamphetamine with the intent to distribute it. See United States v. Rigby, 896 F.2d 392, 394 (9th Cir. 1990) (findings of the district court upheld where defendant did not challenge the accuracy of the PSR, but only the inferences drawn from it).
 
 
 10
 Paragraphs 15 and 16 of Hensley's PSR read as follows:
 
 
 11
 15. During a search of Hensley's person, the officer located a loaded Bersa .38 caliber semi-automatic pistol, serial number 246836, on the right side of Hensley's waistband area with a "round" chambered and a "clip" magazine. Also located on and seized from Hensley were 20.3 grams (net weight) of methamphetamine, a Mead notebook containing what the officer believed to be drug transaction records, a bag of syringes, a spoon and a set of electronic scales.
 
 
 12
 16. At the time of his arrest, Hensley was transported to the Salem Hospital for treatment of the wounds he sustained in the motorcycle crash. Hensley told the officer he had borrowed the gun from a friend about one-and-a-half weeks ago and the gun was loaded when he borrowed it. He also advised he bought approximately one ounce of methamphetamine a few days earlier for $900 and that he added some Vitamix powder to the methamphetamine. Defendant denied selling methamphetamine.
 
 
 13
 Hensley's only objections to the contents of paragraphs 15 and 16 were that (1) the notebook did not contain drug transaction records, but contained instead contained names and addresses of acquaintances; and (2) he did not add Vitamix powder to the methamphetamine.
 
 
 14
 If we then view the facts contained in paragraphs 15 and 16 of the PSR with the disputed information removed, those paragraphs still contain sufficient information from which the district court could find by a preponderance of the evidence that Hensley possessed the firearm in connection with the crime of distribution of methamphetamine. Therefore we find that the district court did not clearly err when it found that Hensley possessed a firearm in connection with a controlled substance offense, and calculated his offense level accordingly.
 
 III. CONCLUSION
 
 15
 The sentence imposed by the district court is AFFIRMED.
 
 
 
 *
 The Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Under the Oregon sentencing guidelines, a "person felony" apparently receives a much higher offense level than a non-person felony