59 F.3d 177
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Dale SHEPARD, a.k.a. Arthur Zelson, Defendant-Appellant.
 No. 94-10391.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 9, 1995.
Decided May 12, 1995.
 
 Before: CHOY, POOLE, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Dale Shepard, a.k.a. Arthur Zelson, appeals his 24-month sentence imposed upon revocation of his term of supervised release. Appellant contends the district court failed to comply with the requirements of U.S.S.G. Sec. 7B1.4 when it sentenced him, because that section only authorizes a four to ten month term. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 FACTS AND PROCEEDINGS
 
 3
 Shepard was convicted of money laundering in 1991, and released from custody in October 1993 with instructions to report to the Eastern District of Pennsylvania for supervision. Instead of reporting as required, he absconded to Arizona. After he was arrested on a supervised release violation warrant, supervision and jurisdiction of Shepard's case were transferred to the District of Arizona in February 1994. Several weeks later, appellant was reinstated to supervised release for three years.
 
 
 4
 In May 1994, another supervised release violation was issued for the arrest of Shepard because he failed to comply with an order to participate in a mental health counseling program. Shortly after his arrest, officers of the U.S. Marshal's Service discovered information at Shepard's residence indicating that he was involved in another mail fraud scheme. Appellant had sent out correspondence asking recipients to invest in a mail stuffing business, though they received nothing after mailing their money to him. Shepard collected about $2,000 in the scheme, which was remarkably similar to the scheme he perpetrated in Pennsylvania, in which he grossed over $200,000. Shepard admitted this latest charge of engaging in mail fraud as part of a plea agreement.
 
 
 5
 The United States Probation Office prepared a supervised release violation disposition report guideline for the district court. Pursuant to Sec. 7B1.4, the failure to participate in the mental health counseling program was a Grade C violation, and the commission of the mail order fraud scheme was a Grade B violation. Shepard had a criminal history category of I. The Grade B violation took precedence because it constituted felonious behavior that can be punishable by a term of imprisonment exceeding one year. U.S.S.G. Sec. 7B1.1.
 
 
 6
 The report stated that "[t]he imprisonment range for a Grade B violation is four to ten months; however, the aforementioned information pursuant to 7B1.4 constitutes policy statements only and the Court is not bound by the custody limits set forth in the revocation table. Mr. Zelson, pursuant to 18 U.S.C. Sec. 3583(e)(3), is subject to a possible maximum imprisonment range of 24 months." Disposition Report, 7/8/94 at 17.
 
 
 7
 The district court revoked Shepard's probation. Rejecting the four to ten month range, the court sentenced him to the statutory maximum, 24 months in prison.
 
 DISCUSSION
 
 8
 The district court's interpretation and application of the Sentencing Guidelines is reviewed de novo. United States v. Buenrostro-Torres, 24 F.3d 1173, 1174 (9th Cir. 1994).
 
 
 9
 Shepard contends that the district court erred by failing to consider the Sentencing Guidelines or state its reason for imposition of the sentence. He maintains that Chapter 7 should bind courts in revocation of supervised released proceedings.
 
 
 10
 We have stated quite distinctly that because Chapter 7 contains policy statements rather than strict guidelines, a sentencing court is not required "to follow Chapter 7's policy statements when imposing sentence upon a revocation of probation." United States v. Forrester, 19 F.3d 482, 484 (9th Cir. 1994); see also U.S.S.G. Ch. 7, Pt. A3(a) (comment by the Sentencing Commission that it opted to promulgate advisory policy statements in Chapter 7 for the revocation of probation and supervised release, because policy statements provide both the Commission and the courts with "greater flexibility" than guidelines). Applying Sec. 3583(e)(3) to the facts, the sentencing court in the present case clearly was within its statutory authority when it sentenced Shepard to the 24-month sentence.
 
 
 11
 Shepard correctly argues, however, that the sentencing court had to consider the policy statements contained in Chapter 7. See 18 U.S.C. Sec. 3553(a)(4)(B), (a)(5); see also Forrester, 19 F.3d at 484; United States v. Baclaan, 948 F.2d 628, 631 (9th Cir. 1991) (per curiam). The paramount question thus becomes whether the district court adequately considered Chapter 7.
 
 
 12
 It is true that the district court order does not explicitly refer to Chapter 7. It is clear from the record, however, that the court was familiar with, and relied upon, the supervised release violation report. The court even asked Shepard's counsel whether he had received "the memorandum....to the Court.... going over Mr. Shepard's circumstances?" Reporter's Transcript ("R.T.") 7/15/94 at 143. Because that report accurately considered and analyzed the appropriate policy statements, the district court must also have implicitly considered those statements when formulating its decision.
 
 
 13
 It is also clear from the record that the district court wanted to sentence Shepard to the maximum possible sentence. In part, this was because Shepard had agreed to a plea agreement so that he would not be prosecuted for the underlying criminal conduct. Therefore, the revocation of supervised release also served to "provide sufficient punishment or deterrence for that type of activity." R.T. 7/15/94 at 82. The court concluded that "Shepard has not conducted his last scam," R.T. 7/15/94 at 87, and declared that when it reinstated appellant to supervised release, it "did so under a mistake." R.T. 7/15/95 at 112.
 
 
 14
 Thus, when the court was advised "by the probation office that Mr. Shepard can be sentenced to a maximum period of incarceration of 24 months," it decided that such a sentence was "a suitable period of time." R.T. 7/15/94 at 145. To have rationally decided on the maximum period, the court must first have considered the lesser possible sentences under Chapter 7, and then purposely rejected them.
 
 
 15
 The court referred to the guidelines explicitly when, at the end of the hearing, it noted that "this case illustrates one of the problems" that exists with "the guideline sentencing." R.T. 7/15/94 at 151. This is even further proof of the court's consideration and ultimate rejection of the policy statements.
 
 
 16
 Additionally, Shepard contends that the district court violated his due process rights by failing to give him notice of its intention to depart upward from the guidelines. However, because there was no guideline from which to depart, the district court could not have advised appellant about such a departure. See United States v. Lockard, 910 F.2d 542, 545 (9th Cir. 1990). Furthermore, notice of such an intent would have been fulfilled by the disposition report's suggestion to impose the maximum sentence available for Shepard. See United States v. Ramirez Acosta, 895 F.2d 597, 601 (9th Cir. 1990) (notice requirement is satisfied when a presentence report mentions factors possibly warranting departure).
 
 
 17
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3