**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 23 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ANDREW GRABOW,

       Plaintiff-Appellant,

v.

WILLIAMS NATURAL GAS
COMPANY,

       Defendant-Appellee.

No. 98-5170
(D.C. No. CV-97-498-K)
(Northern District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, **PORFILIO**, and **EBEL**, Circuit Judges.

Andrew Grabow appeals the district court's grant of summary judgment to his

former employer, Williams Natural Gas Company (WNG), on his claim that WNG

terminated him because of his age in violation of the Age Discrimination in Employment

Act (ADEA), 29 U.S.C. §§ 621-634.  On appeal, Mr. Grabow contends that genuine

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

issues of material fact exist which preclude summary judgment.  We agree, reverse, and remand for further proceedings.

At the time of his termination on June 14, 1995, Mr. Grabow was fifty years old and had worked as an information systems employee for WNG and its predecessor companies for over ten years.  For the majority of that time, Mr. Grabow appears to have performed his job satisfactorily.  However, in his January 1995 employee evaluation, covering his performance during 1994, Mr. Grabow received an overall rating of "I" indicating that his work performance needed to improve.  In March 1995, Mr. Grabow received a written warning that if his performance did not improve in the next ninety days he would be subject to disciplinary actions including termination.

During his tenure as an employee of WNG, Mr. Grabow had on several occasions, and with the sanction of WNG, attended an Energy and Telecommunications Association Conference (ENTELEC).  In April 1995, Mr. Grabow again attended an ENTELEC conference in Houston, Texas, missing three days of work.  However, upon his return, Mr. Grabow was terminated for missing work and attending the conference without permission.  Believing he had been given permission to attend, and that his termination was actually motivated by age discrimination, Mr. Grabow sued WNG under the ADEA.  This appeal follows the district court's grant of summary judgment in favor of WNG.

We review a grant of summary judgment *de novo*, applying the same legal standard used by the district court. ***Ingels v. Thiokol Corp.***, 42 F.3d 616, 620 (10th Cir. 1994). Under that standard, summary judgment is appropriate only if "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). When applying this standard, we view the evidence and all reasonable inferences that can be drawn from it in the light most favorable to the nonmoving party. ***MacDonald v. Eastern Wyo. Mental Health Ctr.***, 941 F.2d 1115, 1117 (10th Cir. 1991). A genuine issue of fact exists when the parties have produced enough evidence supporting the claimed factual dispute to require resolution of the parties' differing versions of the truth at trial. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248-49 (1986). Where, as here, the nonmoving party will bear the burden of proof at trial, that party must "go beyond the pleadings and by her own affidavits or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" ***Mares v. ConAgra Poultry Co.***, 971 F.2d 492, 494 (10th Cir. 1992) (quoting ***Celotex Corp. v. Catrett***, 477 U.S. 317, 324 (1986)). To establish a prima facie case of age discrimination, a plaintiff must prove he was (1) within the protected age group; (2) doing satisfactory work; (3) discharged despite the adequacy of his work; and (4) replaced by a younger person. *See* ***Marx v. Schnuck Markets, Inc.***, 76 F.3d 324, 327 (10th Cir. 1996). On WNG's motion for summary judgment, the district court determined that Mr. Grabow

met all four elements and successfully established a prima facie case of age discrimination. Neither party appeals that determination.

Once a plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employee's termination. *Ingels*, 42 F.3d at 621. The district court held that WNG's explanation –attendance at a conference without permission– constituted a legitimate nondiscriminatory reason for the termination. Once the defendant has articulated a legitimate justification for the termination, the burden shifts back to the plaintiff to show either direct evidence of age discrimination or that the defendant's legitimate nondiscriminatory reason is pretext for discrimination. *Id.* at 621-22.

Mr. Grabow made no effort to offer direct evidence of discrimination, but rather has attempted to prove that WNG's proffered explanation of the firing is pretextual. Mr. Grabow insists that WNG's explanation cannot be legitimate because he did have permission –verbally from one supervisor and implicitly from another– to attend the conference. The district court, however, rejected this argument, finding that Mr. Grabow had not produced sufficient evidence of permission to survive WNG's motion for summary judgment.

Thus the sole issue before us is whether that determination is supported by the record. Our review focuses on whether a reasonable jury could conclude WNG's

proffered justification for discharging Mr. Grabow was pretextual. So confined, we conclude there is indeed a genuine factual dispute surrounding the essential issue.

The first factual dispute is whether Mr. Grabow's supervisor, Mr. Tucker, gave him verbal permission to attend the conference. Mr. Grabow testified in his deposition that Mr. Tucker told him to purchase a ticket for the conference and that he would notify Mr. Grabow if he could not go:

> A:    Yes, he [Mr. Tucker] said I'll – I'll let you know if you can't go.
> Q:    He said the burden's [sic] on me to come back to you to let you know you cannot go?
> A:    Yes.

Mr. Grabow testified that because Mr. Tucker never notified him that he could not go, he believed he had permission to go:

> I just assumed that when he said go ahead and get the reservation and I'll get back to you that he would have gotten back to me within a couple of days and we would have arranged to send someone else. When that didn't happen, I just assumed that I was to go.

Mr. Tucker's deposition testimony conflicts directly with Mr. Grabow's:

> I do remember him coming in with that specific question regarding the ENTELEC conference . . . . I did not have an answer for him with respect to a yes or no.
>     What I did was pull my budget book down and look at it and there were a couple of budgeted slots for people to attend that conference, but knowing that Andy again just two or three weeks prior had not been reviewed positively, I did not give him permission to attend that conference at that time. I told him I would check with Maurice Burns, who was the manager at that time . . . .

A similar factual dispute emerges between the deposition testimony of Mr. Grabow and another supervisor, Ms. Denton. Mr. Grabow alleges that Ms. Denton knew of his plans to attend the conference, and her failure to tell him not to go contributed to his belief he had permission to go. In his deposition, Mr. Grabow testified that Ms. Denton was present at several staff meetings where he mentioned that he would be attending the conference:

Q:      At what staff meeting with [Ms. Denton] was there some discussion
        of your attendance at the ENTELEC conference?
A:      We normally have a staff meeting on Monday mornings with [Ms.
        Denton's] group. Sometimes she'd be in attendance, and sometimes she
        wouldn't.
Q:      And you believe that at one of these staff meetings there must have been
        some mention about this?
A:      Yes. Well, at about three of them. It was just more or less traditional to let
        people in the group know that you were going in case they wanted you to
        look for anything in particular.
Q:      Do you have any independent recollection that she was at these staff
        meetings?
A:      Yes. . . .
                . . . .
A:      I announced it several times in staff meetings that I was going. . . . [S]everal
        people asked me to pick up materials for them.

For her part, Ms. Denton flatly denies any recollection of being present at such a meeting:

Q:      And so I'm going to ask you, ma'am, do you recall being present at a
        staff meeting the week before – during the week before Mr. Grabow
        left to go to ENTELEC wherein it was discussed that he was going
        to ENTELEC?
A:      I do not recall that.
Q:      Do you recall that at that staff meeting people at that staff meeting in
        your presence asked him for various favors; in other words, to pick

things up, to get information, to do this or that at the ENTELEC seminar in Houston, Texas?

A:     Since I can't recall being there, I can't recall any discussion that would have taken place.

Mr. Grabow also produced evidence that, prior to his departure, a co-worker e-mailed a schedule to Ms. Denton indicating Mr. Grabow's planned attendance at the conference. In her deposition, Ms. Denton denies the e-mail informed her of Mr. Grabow's planned absence:

Q:     [Y]ou got this E-mail, did you not, ma'am, on or about March 30th, 1995; is that correct?

A:     Yes.

Q:     And you read this E-mail; is that correct?

A:     Yes.

              . . . .

Q:     And you see the second line down it says Andy is scheduled to be at ENTELEC next week?

A:     Yes I see that.

Q:     Would you agree with me ma'am, that this puts you on notice that Andy was going to attend the ENTELEC seminar?

A:     Actually, the way that I treat this is if it's coming from one employee talking about what he thinks some other employee is going to do – it could be hearsay from Alan and to be quite honest, when I received this E-mail, I was looking for something very specific in it that I had asked Alan for and that had to do with some call out information as well as some pricing as – what you see here.

Q:     Below it?

A:     Some phones, yes. So when I opened the E-mail, I looked for what I was looking for and then went on.

Thus, Mr. Grabow has put into evidence facts that make the grant of summary judgment erroneous. Indeed, viewing the evidence in the light most favorable to Mr. Grabow, as we must, it is possible to infer that one supervisor gave him permission to go

to the conference, and another knew of his plans but said nothing. We believe that from these facts a reasonable jury could conclude Mr. Grabow had permission to attend the conference, and WNG's explanation of the termination is pretextual. Of course, these facts are sharply disputed, but resolution of that dispute requires the type of credibility determination that lies in the providence of a jury. ***United States v. Uresti-Hernandez***, 968 F.2d 1042, 1045 (10th Cir. 1992) ("Credibility determinations are for the jury, not the appellate court."). We therefore **REVERSE** the district court's grant of summary judgment against Mr. Grabow and **REMAND** for further proceedings in accordance with this order and judgment.

ENTERED FOR THE COURT


John C. Porfilio
Senior Circuit Judge