**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 16-10017 |
| v. | D.C. No. 4:14-cr-00131-JGZ-BGM-1 |
| LIDIA RODRIGUEZ, *Defendant-Appellant.* | OPINION |

Appeal from the United States District Court
for the District of Arizona
Jennifer G. Zipps, District Judge, Presiding

Argued and Submitted September 12, 2017
San Francisco, California

Filed January 30, 2018

Before: Alex Kozinski* and Michelle T. Friedland, Circuit
Judges, and Mark W. Bennett,** District Judge.

Opinion by Judge Bennett

---

*\* Judge Kozinski retired before this opinion was finalized, but he had concurred in the result and the substance of everything contained herein.*

*\*\* The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa, sitting by designation.*

**SUMMARY**[***]

**Criminal Law**

The panel reversed a conviction for transporting an illegal alien for financial gain in violation of 18 U.S.C. §§ 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(i).

The panel rejected the government's contention that the defendant failed to preserve the error in the district court's jury instruction defining "reckless disregard." The panel held that the jury instruction was flawed because even assuming that the instruction required that the defendant be aware of facts from which the inference of the risk at issue could be drawn, it plainly did not require that the defendant actually draw the inference – *i.e.,* that she was subjectively aware of the risk. The panel concluded that this is not a proper case in which to conduct a harmless error review because the government did not argue that any error in the instruction was harmless, the general verdict does not indicate upon which alternative theory of mens rea the jury relied, and the case is not extraordinary.

The panel held that the admission of a passenger's videotaped deposition violated the defendant's Confrontation Clause rights because the government made an insufficient showing that the passenger was "unavailable," where the government's efforts to secure his presence were not reasonable. The panel rejected the

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

defendant's contention that the district court improperly admitted evidence of her prior conviction.

## COUNSEL

M. Edith Cunningham (argued), Assistant Federal Public Defender, and Jon M. Sands, Federal Public Defender, Office of the Federal Public Defender, Tucson, Arizona, for Defendant-Appellant.

Robert L. Miskell (argued), Assistant U.S. Attorney, and Elizabeth A. Strange Acting United States Attorney, United States Attorney's Office, Tucson, Arizona, for Plaintiff-Appellee.

## OPINION

BENNETT, District Judge:

Lidia Rodriguez appeals her conviction and sentence for transporting an illegal alien for financial gain in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(i). She was arrested at a Border Patrol checkpoint on I-19 between Nogales and Tucson, Arizona, after the passenger in her vehicle admitted the B1/B2 border crossing card he showed to Border Patrol agents did not belong to him.

Rodriguez seeks reversal of her conviction and remand for a new trial—which would be her third on this charge—on several grounds. First, she contends a jury instruction incorrectly defined "reckless disregard." She also contends, among other things, that the prosecutor's showing of "unavailability" of her passenger was insufficient to admit

his videotaped deposition at trial and that her prior conviction was improperly admitted.

We reverse.

## I. INTRODUCTION

### A. Factual Background

Lidia Rodriguez lives in Rio Rico, Arizona, which is just north of Nogales. The parties agree that, on December 17, 2013, Rodriguez picked up a young man, as arranged, at a parking lot in Nogales, asked to see his border crossing card, which identified him as Jorge Miranda Bueno, then put the card on the seat beside her. In a videotaped deposition, taken on January 24, 2014, before his deportation, her passenger testified about how he had obtained a ride with Rodriguez. He had been making his third attempt to enter the United States, after he had been sent back to Mexico on two previous tries. He had made arrangements to pay a man he knew only as "Pecos" $4,000 to help him, if he successfully crossed into the United States. Pecos told him to go to the McDonald's after crossing into Nogales, where a man with a black and gray cap would pick him up. When he got to the McDonald's, the man in the cap arrived and, without discussion, drove him to a house, left him in the car for a couple of hours, then returned with a border crossing card with a photograph that the man said looked like him, and told him to learn the name very well. The man then took him to a parking lot, where Rodriguez picked him up. Rodriguez spoke with the man in the cap, but the passenger did not hear what was said. Rodriguez asked to see the passenger's border crossing card, told the passenger he should not get nervous, and gave him a cell phone to use to play games. The passenger testified he understood they were going to Tucson.

Although Rodriguez did not testify, other witnesses' trial testimony showed that, when Rodriguez and her passenger arrived at the primary inspection area of the Border Patrol checkpoint on I-19, about 41 kilometers north of Nogales, Border Patrol Agent Luis Perez stopped their vehicle. Agent Perez asked Rodriguez if she was a U.S. citizen; she said she was and produced a U.S. passport card. Her passenger did not respond when asked the same question. Agent Perez thought the passenger looked ill at ease and was wearing a new shirt. Agent Perez explained that illegal aliens frequently changed out of the clothing they had worn to cross through the desert to try to blend in better. Rodriguez handed Agent Perez the border crossing card, which she said was the young man's. At some point, Rodriguez told Agent Perez that she was going to Tucson to shop. Agent Perez did not believe that the border crossing card showed Rodriguez's passenger, so he directed her vehicle to secondary inspection.

At secondary inspection, in answer to Border Patrol Agent Oscar Hidalgo's questions, Rodriguez repeated that she was a U.S. citizen. When Agent Hidalgo asked the passenger about his citizenship, the passenger handed him the border crossing card. Agent Hidalgo directed the passenger to sit on a bench, some 20 or 30 feet away from Rodriguez's vehicle, so he could continue questioning him. The passenger told Agent Hidalgo he had walked over the border that morning with the border crossing card to go shopping in the United States. Agent Hidalgo testified that, at some point during his questioning of the passenger, Rodriguez yelled from her vehicle, "We're going shopping," but that information was not in his report of the incident.

The passenger testified in his later videotaped deposition that he had not made any plans with Rodriguez to go

shopping prior to the interactions with the officers.  The passenger further testified that he thought three agents examined the border crossing card, that one thought the photograph on it looked like him, one didn't, and a third wasn't sure.

Agent Hidalgo testified that he did not think the photograph looked like the passenger.  Agent Hidalgo called a dispatcher who reported back that the border crossing card had not been used since June.  When Agent Hidalgo asked the passenger if he had any other identification, the passenger showed Agent Hidalgo his completely empty wallet.  Agent Hidalgo thought going shopping with an empty wallet was unusual.  A weapons search produced an identification card in the name of Enrique Martinez-Arguelles from underneath the passenger's sock.  At that point, the passenger admitted he was not the person in the photograph on the border crossing card, but was Martinez-Arguelles, and he was detained.  Rodriguez was also arrested.

## B.  Procedural Background

On the order of a magistrate judge, Mr. Martinez-Arguelles's deposition was taken on January 24, 2014, prior to his deportation, before the prosecutor and Rodriguez's then-defense counsel.  The videotaped deposition was introduced, over Rodriguez's objection, during her first trial, in September 2014.  Rodriguez also testified at her first trial and, because she did, the jury learned that she had a prior conviction for conspiracy to commit fraud.  Rodriguez was convicted, but the district judge granted her a new trial, because her counsel had suffered medical problems that had undermined the effectiveness of his representation.

At Rodriguez's second trial, in July 2015, which is the one at issue in this appeal, Mr. Martinez-Arguelles's videotaped deposition was again introduced into evidence over Rodriguez's objection. Agents Perez and Hidalgo testified as described above. An expert for the prosecution and an expert for the defense testified about smuggling along the border. Rodriguez did not testify, but her husband did. Rodriguez also presented the testimony of a neuro-optometric specialist that Rodriguez has marked visual disabilities that can create blurred vision, double vision, and transposition, resulting in difficulties interpreting and processing information. That evidence was offered to explain why Rodriguez might not have recognized that the passenger was not the person shown on the border crossing card he gave her. Because Rodriguez argued at trial that Border Patrol agents have special training to detect imposters using documents of others, the prosecution was allowed to introduce evidence of Rodriguez's prior conspiracy conviction involving fraudulent use of immigration stamps to show her knowledge that aliens use false or fraudulent documents to enter the United States.

At the end of their first day of deliberations, the jurors indicated they were at an impasse, so the district judge gave an *Allen* charge, based on the Ninth Circuit model. This reminded the jurors that they had "a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict if each [could] do so without violating [his or her] individual judgment and conscience," and instructed the jurors to "decide the case for [themselves]" but to "not hesitate to reexamine [their] own views." The judge then sent the jury back for further deliberations. After receiving a note and questioning jurors, the district court removed one juror on the prosecution's motion, joined by Rodriguez, and replaced that juror with an alternate. The

jury convicted Rodriguez of transporting an illegal alien in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and for doing so for financial gain in violation of § 1324(a)(1)(B)(i) less than two hours later.

At sentencing, in January 2016, the district court applied a two-level enhancement, pursuant to the U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2L1.1(b)(3), for committing the charged offense after a prior conviction for a felony "immigration and naturalization offense." Rodriguez was sentenced to twelve months and one day.

Rodriguez appeals her conviction and sentence. She was granted release pending appeal.

## II. LEGAL ANALYSIS

As mentioned at the outset of this opinion, Rodriguez challenges her conviction on several grounds and her sentence on one ground. We will consider in turn Rodriguez's asserted grounds for relief.

### A. Challenges To The Conviction

### 1. The "reckless disregard" instruction

Rodriguez's first challenge to her conviction is that the district court gave an incorrect definition of "reckless disregard" in its instructions. She argues the district court's definition did not require awareness of risk, only unreasonable failure to recognize risk, contrary to *Farmer v. Brennan*, 511 U.S. 825 (1994). *See id.* at 837. To put it another way, she contends the instruction permitted a guilty verdict based on mere failure to perceive a risk, which reflects negligence, not recklessness. The government argues the error was not preserved because Rodriguez did

not object at trial to the instruction defining "reckless disregard" as defining "negligence," so review is only for plain error. The government further argues that, whatever the standard of review, the instruction was correct.

### a. Additional factual background

The statute under which Rodriguez was charged imposes criminal penalties on "[a]ny person who . . . *knowing or in reckless disregard* of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law." 8 U.S.C. § 1324(a)(1)(A)(ii) (emphasis added). It provides increased penalties if "the offense was done for the purpose of commercial advantage or private financial gain." 8 U.S.C. § 1324(a)(1)(B)(i).

Rodriguez asked the district court to give the following instruction defining "reckless disregard":

> A person acts in reckless disregard with respect to a circumstance when a person is aware of and consciously disregards a substantial and unjustifiable risk that the circumstance exists. The risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

This instruction is drawn from the Model Penal Code § 2.02(2)(c). Rodriguez also requested an instruction that negligence or mistake is insufficient to establish "reckless disregard."

The district court, however, initially proposed the following instruction on "reckless disregard":

> Reckless disregard is defined as deliberate indifference to the facts which, if considered and weighed in a reasonable manner, indicate a substantial and unjustifiable risk that the alleged alien was in fact an alien and was in the United States unlawfully.

The Model Criminal Jury Instruction for the Ninth Circuit on a § 1324(a)(1)(A)(ii) offense, § 9.2, does not define "reckless disregard," so the district court understandably based this instruction on a comment to that model instruction, which indicated that this definition was derived from decisions of the Tenth and Eleventh Circuits.

Rodriguez objected to this instruction, *inter alia*, on the following grounds:

> Recklessness is an awareness of risk and a conscious disregard of the awareness. The Court's proposed instruction does not state the necessary awareness of risk. It just says if there is a substantial and [un]justifiable risk. It doesn't link the existence of a risk to awareness of the same.

The prosecutor suggested the court replace "deliberate indifference to the" with "knowledge of," and Rodriguez's counsel agreed to that change. However, Rodriguez's counsel then repeated a request for an instruction requiring "conscious disregard of the risk of which one has knowledge." The district court announced, "I'm going to make the modification agreed to by the parties," but

"decline[d] to read the second sentence" of Rodriguez's proposed instruction, and did not make any other change.

Consequently, the definition of "reckless disregard" presented to the jury was the following:

> Reckless disregard is defined as knowledge of facts which, if considered and weighed in a reasonable manner, indicate a substantial and unjustifiable risk that the alleged alien was in fact an alien and was in the United States unlawfully.

### b. Preservation of error

We reject the government's contention that Rodriguez failed to preserve the error in the "reckless disregard" instruction. In *Black v. United States*, 561 U.S. 465 (2010), the Supreme Court explained,

> [T]he Criminal Rules . . . are informative on objections to instructions. Rule 30(d) "clarifies what . . . counsel must do to preserve a claim of error regarding an instruction." The Rule provides: "A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate."

*Id.* at 473 (first quoting Fed. R. Crim P. advisory committee's note to 2002 amendment, then quoting Fed. R. Crim. P. 30(d)). We have held that an error is preserved when the substance of the objection was "patently" clear, even if defense counsel did not use the precise terms used on

appeal. *United States v. Ward*, 747 F.3d 1184, 1189 (9th Cir. 2014).

Here, Rodriguez did not state her objection to the district court's instruction on "reckless disregard" in terms of "negligence" or reiterate her request to distinguish "reckless disregard" from "negligence." Nevertheless, she did make patently clear that the substance of her objection was the failure of the district court's instruction to require awareness of the risk, not merely knowledge of facts reasonably indicating the risk. *Id.* After the district court indicated it would replace "deliberate indifference to the" with "knowledge of," Rodriguez's counsel specifically repeated a request for an instruction requiring "conscious disregard of the risk of which one has knowledge." This statement was sufficient to inform the court of the specific objection and the grounds for it, so the error was preserved. *See Black*, 561 U.S. at 473.

### c.  *Misstatement of the law*

Rodriguez argues the instruction misstates the law, so our review is de novo. *United States v. Kleinman*, 859 F.3d 825, 835 (9th Cir. 2017). We have explained,

> A district court's formulation of jury instructions must adequately cover the applicable law and must not be misleading. We review the instructions as a whole when determining if there was instructional error.

*United States v. Ubaldo*, 859 F.3d 690, 705 (9th Cir. 2017), *cert. denied*, No. 17-6884, 2018 WL 311758 (U.S. Jan. 8, 2018). The district court's reliance on the comment to the pertinent model instruction was understandable. Nevertheless, its instruction on "reckless disregard,"

examined as a whole, does not correctly cover the applicable law and is misleading. *Id.*

### i. The Farmer definition

First, the Supreme Court has made plain that criminal recklessness generally requires that "a person disregards a risk of harm of which he is aware." *Farmer*, 511 U.S. at 837 (citing, *inter alia*, Model Penal Code § 2.02(2)(c));[1] *accord Voisine v. United States*, 136 S. Ct. 2272, 2278 (2016). Thus, the defendant "must both *be aware of facts* from which the inference could be drawn that a substantial risk of serious harm exists, and he must *also draw the inference*." *Farmer*, 511 U.S. at 837 (emphasis added). In other words, the standard requires that the defendant "was subjectively aware of the risk." *Id.* at 829.

The instruction, here, was contrary to *Farmer*. First, the instruction states that "[r]eckless disregard is defined as knowledge of facts" from which an inference of risk could

---

[1] Model Penal Code § 2.02(2) identifies and defines four mentes reae for criminal culpability: (a) purposely; (b) knowingly; (c) recklessly; and (d) negligently. It defines "recklessly" as follows:

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

Model Penal Code § 2.02(2)(c).

be drawn, but does not meet the requirement in *Farmer* that the *defendant* "must . . . be aware of facts" from which the inference could be drawn.  *Id*. at 837.  The district court may have intended the instruction to require the appropriate mens rea—the defendant's subjective knowledge of the facts—because the definition the court gave relates to the third element of the "Alien—Illegal Transportation" instruction, which states, "the defendant knew or acted in reckless disregard of the fact that Enrique Martinez-Arguelles was not lawfully in the United States."   Nevertheless, that implication is far from obvious here, because the definition of "reckless disregard" is set off in a separate instruction, which does not explicitly require Rodriguez herself to have knowledge of the facts at issue.  As a separate instruction, it is ambiguous whether the "knowledge of facts" at issue is the defendant's subjective knowledge of the facts or a reasonable person's, for example.

Even assuming that the district court's "reckless disregard" instruction required that Rodriguez be aware of *facts* from which the inference of the risk at issue could be drawn, it plainly did not require that she actually *draw the inference*, *id.*, *i.e.*, it did not require that she was subjectively aware of the risk*, id*. at 829.  We are unable to follow or accept the government's semantic gymnastics, which somehow lead it to conclude that an instruction requiring the defendant to have "knowledge of facts which, if considered and weighed in a reasonable manner, indicate[d] a substantial and unjustifiable risk," required that a defendant knew of a substantial and unjustifiable risk that his conduct was criminal, as required by *Farmer*. *Id.* at 837.  In our view, this language plainly *does not* require that Rodriguez was actually aware of the risk, only that she have been aware of *facts* from which an inference of risk might reasonably be drawn.

We recognize that the decision in *Farmer* did not address, specifically, the meaning of "reckless disregard" in 8 U.S.C. § 1324(a)(1)(A)(ii), nor have we ever done so. Nevertheless, we have recognized the general applicability of the definition of "recklessness" in *Farmer* to other criminal charges.

For example, in *United States v. Rodriguez*, 790 F.3d 951 (9th Cir. 2015), we turned to *Farmer* and the Model Penal Code to determine the meaning of "reckless disregard" in the case of a criminal statute requiring proof of a willful attempt to interfere with the operator of an aircraft, with either the intent to endanger others or reckless disregard for human life. *Id.* at 953 (describing a violation of 18 U.S.C. § 32(a)(5) and (8)). As we explained,

> A reckless disregard for the safety of human life has both a subjective and an objective component. *First, the defendant must be aware of the risk his conduct created* (here, that the laser had the ability to blind or distract a pilot enough to cause a crash). As the Supreme Court recognized in *Farmer v. Brennan*, "[t]he criminal law[ ] [ ] generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware."

> *Second, the risk must be "'of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.'"* To put it

> succinctly, a defendant acts recklessly when he "deliberately disregard[s] a substantial and unjustifiable risk . . . *of which [he is] aware*."

*Id.* at 958 (alterations in original) (emphasis added) (citations omitted). Thus, we reiterated the subjective requirement that the defendant must be *aware of the risk his conduct created*, although the nature of the risk is measured by an objective standard, that is, "its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id.* (quoting *United States v. Albers*, 226 F.3d 989, 995 (9th Cir. 2000)).

Similarly, in *Albers*, we considered the meaning of "recklessly" in the definition of disorderly conduct in 36 C.F.R. § 2.34(a)(4). 226 F.3d at 995. We explained,

> The Supreme Court has, moreover, explained that the criminal law generally permits a finding of recklessness only when persons disregard a risk of harm of which they are aware. *We thus conclude that the relevant inquiry in finding recklessness here is whether the defendants deliberately disregarded a substantial and unjustifiable risk of creating a hazardous or physically offensive condition of which they were aware.*

*Id.* (emphasis added). Moreover, in our en banc decision in *United States v. Heredia*, 483 F.3d 913 (9th Cir. 2007) (en banc), we explained "[a] reckless defendant is one who merely *knew* of a substantial and unjustifiable risk that his conduct was criminal." *Id.* at 918 n.4 (emphasis added).

Thus, a correct definition of "reckless disregard," consistent with Supreme Court and Ninth Circuit law, would include "[the defendant's] disregard[] [of] a risk of harm of which [the defendant] is aware." *Farmer*, 511 U.S. at 837[2]

---

[2] The Seventh Circuit also used the definition of "recklessness" in *Farmer* and Model Penal Code § 2.02(2)(c) to determine the meaning of the term for purposes of the federal criminal contempt statute, 18 U.S.C. § 401(3). *United States v. Mottweiler*, 82 F.3d 769, 771 (7th Cir. 1996). Likewise, that court used this definition for "recklessness" for purposes of 29 U.S.C. § 666, which imposes criminal penalties for disregard of safety rules. *United States v. Ladish Malting Co.*, 135 F.3d 484, 488 (7th Cir. 1998). And Courts of Appeals have embraced an "awareness of risk" requirement for "recklessness," citing either *Farmer*, § 2.02(2)(c), or both, in the context of determining whether state criminal offenses satisfy the requirements of federal laws or sentencing provisions. *See, e.g.*, *Coelho v. Sessions*, 864 F.3d 56, 61 (1st Cir. 2017) (noting the departure from the classic definition of recklessness in § 2.02(2)(c) in the Massachusetts statute defining assault and battery with a dangerous weapon in determining whether or not that offense was a crime involving moral turpitude within the meaning of the Immigration and Nationality Act, 8 U.S.C. § 1229b(b)(1)); *United States v. Trinidad-Aquino*, 259 F.3d 1140, 1146 (9th Cir. 2001) (using § 2.02(2)(c) to determine whether a California conviction for driving under the influence of alcohol with injury to another constitutes a "crime of violence" as defined by 18 U.S.C. § 16, and expressly citing *Farmer* and *Albers* for the requirement of awareness of risk). Furthermore, U.S.S.G. § 2A1.4, cmt. 1, defines "reckless" as "refer[ring] to a situation in which the defendant was aware of the risk created by his conduct." U.S. Sentencing Guidelines Manual § 2A1.4 cmt.1 (U.S. Sentencing Comm'n 2015); *see, e.g.*, *United States v. Carr*, 303 F.3d 539, 546 (4th Cir. 2002) (noting that this is the "standard definition," citing § 2.02(2)(c)); *United States v. Coleman*, 664 F.3d 1047, 1051 (6th Cir. 2012) (concluding that a U.S.S.G. § 3A1.2(c)(1) enhancement requires "recklessness" using the common law definition in *Farmer*); *United States v. Peterson*, 629 F.3d 432, 436 (4th Cir. 2011) (determining that generic "manslaughter," as used in U.S.S.G. § 4B1.2(a), cmt. 1, encompasses "reckless" conduct as defined by § 2.02(2)(c)); *United States v. McCord, Inc.*, 143 F.3d 1095, 1098 (8th Cir. 1998) (concluding that "reckless" within the meaning of

The instruction in Rodriguez's case should have stated something along the lines of the following, with italics representing additions to the wording actually used:

> *The defendant acted with* reckless disregard *if the defendant knew of* facts which, if considered and weighed in a reasonable manner, indicate a substantial and unjustifiable risk that the alleged alien was in fact an alien and was in the United States unlawfully, *and the defendant knew of that risk*.

### ii.  The definition in the Model commentary

We are not persuaded to reach a different conclusion either by the two cases cited in the comment to § 9.2 of the Model Criminal Jury Instructions for the Ninth Circuit or by subsequent decisions of other Circuit Courts of Appeals considering the meaning of "reckless disregard" within 8 U.S.C. § 1324(a)(1)(A)(ii).  The more recent of the decisions cited in the comment, *United States v. Zlatogur*, 271 F.3d 1025 (11th Cir. 2001), simply cites the earlier one, *United States v. Uresti-Hernandez*, 968 F.2d 1042 (10th Cir. 1992), as follows:

> As we have not approved a definition for the term ["reckless disregard"] as it is used under Section 1324, the district court adopted the

---

U.S.S.G. § 2F1.1(b)(4)(A) was the meaning under *Farmer* and § 2.02(2)(c)).

**3** There may be other appropriate formulations, but we offer this as an example of one that would satisfy *Farmer*.

following definition approved by the Tenth Circuit:

["]The phrase [']"reckless disregard of the fact,[']" as it has been used from time to time in these instructions, means deliberate indifference to facts which, if considered and weighed in a reasonable manner, indicate the highest probability that the alleged aliens were in fact aliens and were in the United States unlawfully.["]

We find that this instruction, defining an element of the offense, fairly and accurately stated the law and was therefore proper.

*Zlatogur*, 271 F.3d at 1029 (quoting *Uresti-Hernandez*, 968 F.2d at 1046). To the extent this decision addressed any alleged flaw in the instruction, it was simply to adopt the conclusion of the Tenth Circuit that the instruction was not a "deliberate ignorance" instruction. *Id*. at 1029 n.3. Thus, this adoption of the Tenth Circuit formulation involved no independent analysis, let alone any analysis of the instruction in light of *Farmer*.

The formulation in the Tenth Circuit case should have been suspect, in the first place, because it antedated *Farmer*. Furthermore, the challenge to the instruction in that case was reviewed only for plain error, because there had been no objection. *Uresti-Hernandez*, 968 F.2d at 1046. The challenge was also that the instruction was an improper "deliberate ignorance" instruction, not that it failed to require awareness of risk. *Id*. at 1046–47. Finally, the court found no plain error, because "the direct evidence of Mr. Uresti's actual knowledge of the aliens' illegal status was

overwhelming." *Id*. at 1047.  Thus, this decision provided no analysis of the issue now before us.

Subsequent reiterations of this definition of "reckless disregard" within the meaning of § 1324(a) by the Eleventh, Tenth, and Eighth Circuits are equally unpersuasive.  *See, e.g.*, *United States v. Kalu*, 791 F.3d 1194, 1209 &  n.20 (10th Cir. 2015) (reiterating that the only mentes reae under § 1324(a)(1)(A)(ii) are "knowledge or reckless disregard," but then embracing the faulty instruction); *United States v. Kendrick*, 682 F.3d 974, 984 (11th Cir. 2012) (continuing to define "reckless disregard" with the faulty instruction); *United States v. Garcia-Gonon*, 433 F.3d 587, 591 (8th Cir. 2006) (finding no abuse of discretion in the district court's use of the Eleventh Circuit model).  None of these decisions addresses the correctness of the definition in light of *Farmer* or on any other reasoned basis, despite failure of the definition to require awareness of risk.

In short, the jury instruction at issue here was flawed.

### d.  Propriety of harmless error review

Absent waiver, "[e]ven if we determine an instruction was erroneous or failed to clear up confusion, we must still review whether the error was harmless."  *United States v. Castillo-Mendez*, 868 F.3d 830, 835 (9th Cir. 2017). However, we conclude that this is not a proper case in which to conduct a harmless error review, for several reasons.

### i.  Waiver by the government

The first reason is that the government did not argue that any error in the instruction defining "reckless disregard" was harmless.  We have stated,

> As a general and consistent rule, "when the government fails to argue harmlessness, we deem the issue waived and do not consider the harmlessness of any errors we find." This is true even when the government "mentions" that harmless error applies in its brief but fails to advance a developed theory about how the errors were harmless, as well as when the government makes no argument whatsoever as to harmlessness in its brief.

*United States v. Murguia-Rodriguez*, 815 F.3d 566, 572–73 (9th Cir. 2016) (citations omitted).

Not only do we have a "general and consistent rule" against addressing harmlessness when the government has waived it, there are good policy reasons not to do so. These reasons include the difficulty of determining the effect of the error, particularly if it occurs at a critical point or on a critical issue in the case; our reluctance to expand the doctrine of harmlessness; and our concern not to "encourage the government's laxness and failure to follow this court's clear, applicable precedent." *Id*. at 573. Indeed, considering harmless error where the government has failed to raise it smacks of "'unfairly tilt[ing] the scales of justice . . . [in the government's favor] by constructing [its] best arguments for it without providing the defendant with a chance to respond.'" *United States v. Kloehn*, 620 F.3d 1122, 1130 (9th Cir. 2010) (alterations in original) (quoting *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1101 (9th Cir. 2005)). If any party in federal litigation is in a superior position to raise harmless error, it is the United States of America, the most long-standing and frequent litigant in our federal courts.

### ii.   The effect of the general verdict

Another reason we should not conduct a harmlessness review, when the government has waived the issue, is that "[g]eneral verdicts . . . which permit a jury to convict based on different possible theories—without specifying the theory that forms the basis of the verdict—can complicate this analysis." *Babb v. Lozowsky*, 719 F.3d 1019, 1033 (9th Cir. 2013), *overruling on other grounds recognized by Moore v. Helling*, 763 F.3d 1011 (9th Cir. 2014). Indeed, "[a] conviction based on a general verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid one." *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008). Here, § 1324(a)(1) provides alternative mentes reae for guilt, either "knowledge" or "reckless disregard," the latter improperly defined in the instructions in this case, and the verdict does not indicate which theory the jury relied on.

### iii.   This case is not "extraordinary"

Notwithstanding our "general and consistent rule" to consider harmlessness waived when the government does not argue it, "[w]e have discretion to consider the issue of harmlessness *nostra sponte* in 'extraordinary cases.'" *Murguia-Rodriguez*, 815 F.3d at 573 (quoting *Gonzalez-Flores*, 418 F.3d at 1100–01); *Kloehn*, 620 F.3d at 1130. We have explained,

> [W]e recognize that no interest is served— and substantial time and resources are wasted—by reversal in those unusual cases in which the harmlessness of any error is clear beyond serious debate and further proceedings are certain to replicate the original result. Fortunately, our precedents do

> not foreclose the position that an appellate
> court's sua sponte consideration of harmless
> error is appropriate on occasions of this type.

*Gonzalez-Flores*, 418 F.3d at 1100; *accord United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015) (en banc) ("[W]e can 'make an exception to waiver . . . in the exceptional case in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process.'" (quoting *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1322 (9th Cir. 2012))). More specifically, when we decide whether to consider harmlessness, despite the government's waiver, we consider three factors: "(1) 'the length and complexity of the record,' (2) 'whether the harmlessness of an error is certain or debatable,' and (3) 'the futility and costliness of reversal and further litigation.'" *United States v. Brooks*, 772 F.3d 1161, 1171 (9th Cir. 2014) (quoting *Gonzalez-Flores*, 418 F.3d at 1101); *Kloehn*, 620 F.3d at 1130; *Gonzalez-Flores*, 418 F.3d at 1100–01[4]

The record in this case may not be unduly large, but it is large enough to "render the harmlessness inquiry a 'burdensome' one." *Kloehn*, 620 F.3d at 1130 (quoting *Gonzalez-Flores*, 418 F.3d at 1100). More importantly, we

---

[4] Other Circuit Courts of Appeals also consider these three factors when deciding whether or not to consider the harmlessness of an instructional error, notwithstanding the government's failure to argue harmlessness. *See, e.g.*, *Mollett v. Mullin*, 348 F.3d 902, 920 (10th Cir. 2003); *United States v. Giovannetti*, 928 F.2d 225, 227 (7th Cir. 1991); *see also United States v. Cacioppo*, 460 F.3d 1012, 1025–26 (8th Cir. 2006) (considering whether the evidence against the defendant was so overwhelming that the error was harmless, but cautioning that, when the government waives the issue, the court must "err on the side of the criminal defendant").

have emphasized that "'[t]he second factor—the court's certainty as to the harmlessness of the error—is of particular importance,' and sua sponte recognition 'is appropriate *only* where the harmlessness of the error is not reasonably debatable.'" *Brooks*, 772 F.3d at 1171 (quoting *Gonzalez-Flores*, 418 F.3d at 1101). Thus, "[i]f the harmlessness of the error is at all debatable, prudence and fairness to the defendant counsel against deeming that error harmless without the benefit of the parties' debate." *Gonzalez-Flores*, 418 F.3d at 1101; *accord Kloehn*, 620 F.3d at 1130 ("[W]e have stated that our *nostra sponte* consideration of harmlessness is not appropriate if 'the case is at all close.'" (quoting *Gonzalez-Flores*, 418 F.3d at 1101)).

Here, the harmlessness of the error is, at the very least, "debatable"; consequently, we are not convinced of the futility of reversal and further litigation. *See Brooks*, 772 F.3d at 1171. We cannot assume that the jurors necessarily found that Rodriguez knew that the border crossing card was not her passenger's. The jurors could reasonably have credited the passenger's testimony that he did not think Rodriguez knew that he had entered the United States illegally or, at least, that he did not know if she knew, as well as his testimony that he thought three Border Patrol agents examined the border crossing card, that one thought the photograph on it looked like him, one didn't, and a third wasn't sure. Under a proper instruction, requiring proof that Rodriguez was subjectively aware of the risk that her passenger was in the United States illegally, a jury could quite reasonably have acquitted Rodriguez.

The prejudicial effect is all the more debateable here, because Rodriguez's mens rea was the hotly-contested, central issue in the case. *Castillo-Mendez*, 868 F.3d at 840 (finding prejudice where the erroneously stated element was

the central contested element in the case); *United States v. Conti*, 804 F.3d 977, 981 (9th Cir. 2015) (explaining that an erroneous instruction was harmless beyond a reasonable doubt when it was both uncontested and supported by overwhelming evidence). Indeed, the prosecutor repeatedly argued Rodriguez had unreasonably disregarded facts indicating her passenger was in the United States illegally, thus urging the jurors to rely on the erroneous part of the instruction.

Here, *considering* harmless error is clearly not "necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process." *Dreyer*, 804 F.3d at 1277 (quoting *Ruiz*, 667 F.3d at 1322) (internal quotation marks omitted). Thus, because we decline to *nostra sponte* reach harmlessness, Rodriguez's conviction for transporting an illegal alien under 8 U.S.C. § 1324(a)(1)(A)(ii) must be reversed on the basis of the erroneous instruction, standing alone. It follows that her conviction under 8 U.S.C. § 1324(a)(1)(B)(i) must also be reversed, because this section punishes violations of § 1324(a)(1)(A)(ii), among others, when undertaken "for the purpose of commercial advantage or private financial gain." Because some of the other issues Rodriguez raises "will likely arise in the event of a retrial, we address them now in the interest of judicial economy." *United States v. Alvirez*, 831 F.3d 1115, 1118 (9th Cir. 2016).

### 2. *Admission of the passenger's videotaped deposition*

Rodriguez argues the prosecutor's showing of "unavailability" of Mr. Martinez-Arguelles, the illegal alien she was convicted of transporting, was insufficient to admit his videotaped deposition at trial. The government argues the prosecutor made reasonable efforts to obtain Mr.

Martinez-Arguelles's presence to testify while respecting his attorney-client relationship.

### a. Additional factual background

At the conclusion of Mr. Martinez-Arguelles's videotaped deposition, which was taken prior to his deportation, he agreed to the prosecutor's request to make sure he gave his lawyer all of his contact information, so he could be contacted when he was back in Mexico. Neither party asked Mr. Martinez-Arguelles on the record what his address or contact information was. At a hearing during Rodriguez's first trial, outside the presence of the jury, Mr. Martinez-Arguelles's counsel testified Mr. Martinez-Arguelles had not, in fact, given him his address, adding that he might not have had the chance to do so before he was deported. At a hearing during Rodriguez's second trial, also outside the presence of the jury, the prosecutor stated Mr. Martinez-Arguelles's attorney had represented to the prosecutor that he had "fallen out of touch" with his client. The prosecutor believed he could not contact Mr. Martinez-Arguelles directly, because he was represented by counsel, so prior to both trials, the prosecutor wrote letters to Mr. Martinez-Arguelles, in care of his attorney. The attorney responded in both instances that he was out of contact with Mr. Martinez-Arguelles, but would preserve the letters.

The government had in its possession Mr. Martinez-Arguelles's identification card, which showed his address in Mexico. The prosecutor did not provide that address to Mr. Martinez-Arguelles's attorney, however.

### b.  Confrontation Clause requirements

### i.  The applicable standards

Section 1324(d) authorizes use at trial of the videotaped deposition of a witness to a § 1324(a) violation "who has been deported or otherwise expelled from the United States, or is otherwise unable to testify."  8 U.S.C. § 1324(d). Nevertheless, "good faith efforts to procure witnesses [are] still required" to comport with the Confrontation Clause to the Sixth Amendment.  *United States v. Santos-Pinon*, 146 F.3d 734, 736 (9th Cir. 1998).  "The Sixth Amendment requires 'good-faith efforts undertaken *prior to trial* to locate and present th[e] witness.'"  *Jackson v. Brown*, 513 F.3d 1057, 1084 (9th Cir. 2008) (alterations in original) (quoting *Ohio v. Roberts*, 448 U.S. 56, 74 (1980)).  We review de novo whether the Confrontation Clause was complied with. *United States v. Macias*, 789 F.3d 1011, 1017 (9th Cir. 2015).

### ii.  Application of the standards

In *Jackson*, a case involving a state prisoner's petition for federal *habeas corpus* relief pursuant to 28 U.S.C. § 2254, an investigator employed by the state of California to locate two witnesses did nothing to locate one of the witnesses until several weeks into the defendant's trial and, instead, relied exclusively on a Los Angeles police officer who had been in contact with the witness and had volunteered to contact him again.  513 F.3d at 1084.  We held that the investigator's involvement with other matters was no excuse for the government's failure to engage in good-faith efforts to find the witness, and the reasonableness of the investigator's reliance on the police officer was irrelevant, because the investigator and the police officer

were both state agents responsible for performing good-faith efforts to find the witness. *Id.*

Similarly, here, the prosecutor failed to take good-faith, available measures to locate Mr. Martinez-Arguelles. The prosecutor did not share the address from the border crossing card with that attorney. Nor, apparently, did the prosecutor ever ask whether Mr. Martinez-Arguelles was still represented by counsel at all, a question that could have informed whether it would have been ethically appropriate for the prosecutor to attempt to contact him directly. *Cf. United States v. Pena-Gutierrez*, 222 F.3d 1080, 1088 (9th Cir. 2000) (holding that, where the government had a witness's address in Mexico, and asserted no basis for believing that the witness would not respond to a request to return to the United States to testify, "the government's failure to make *any* effort to contact [the witness] when it had his address in hand was per se unreasonable"). Going through the motions of writing a letter to Mr. Martinez-Arguelles in care of his attorney, when the prosecutor already knew that Mr. Martinez-Arguelles's attorney did not have his address, was not a reasonable or good-faith effort. *Cf. id.*

The government does not attempt to demonstrate any reason for believing that Mr. Martinez-Arguelles would not return to the United States to testify, if asked to do so and if his expenses were paid. *See id.* And doubts that the address in the government's possession was sufficient for a request to be delivered are no excuse for not attempting to contact Mr. Martinez-Arguelles at that address.

Thus, admission of Mr. Martinez-Arguelles's videotaped deposition violated Rodriguez's Confrontation Clause rights.

### 3. Admission of Rodriguez's prior conviction

Next, Rodriguez challenges evidence of her prior conviction.

### a. Additional factual background

In 2005, Rodriguez was convicted pursuant to 18 U.S.C. § 371 of conspiracy to commit fraud and misuse of visas, permits, and other documents in violation of 18 U.S.C. § 1546(a). Rodriguez's prior conviction involved fraudulent use of Immigration and Naturalization Alien Documentation Identification Telecommunication ("ADIT") stamps, obtained by Rodriguez, to smuggle Chinese aliens into the United States through Mexico. The district court admitted the prior conviction pursuant to Rule 404(b) of the Federal Rules of Evidence.

Rodriguez argues this prior offense was too dissimilar to the charged offense to show "knowledge," rather than criminal propensity, pursuant to Rule 404(b). The government argues that the evidence was proper to show that Rodriguez knew that Mr. Martinez-Arguelles was in the country illegally.

### b. Analysis

"Evidentiary rulings admitting evidence of other acts under Federal Rule of Evidence 404(b) are reviewed for an abuse of discretion, but whether the evidence of other acts is relevant to the crime charged is reviewed de novo." *United States v. Livingston*, 725 F.3d 1141, 1148 (9th Cir. 2013) (quoting *United States v. Castillo*, 181 F.3d 1129, 1134 (9th Cir. 1999)) (internal quotation marks omitted). As we have explained, to be admissible pursuant to Rule 404(b),

> [t]he government must show that "(1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged." "[T]he probative value of the evidence must not be 'substantially outweighed by the danger of unfair prejudice.'"

*United States v. Lloyd*, 807 F.3d 1128, 1157–58 (9th Cir. 2015) (alteration in original) (citations omitted).

When Rule 404(b) evidence is offered to prove knowledge, as it was here, the "similarity" requirement does not require that the prior bad act be precisely the same as the charged act, "as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence." *United States v. Hardrick*, 766 F.3d 1051, 1055 (9th Cir. 2014) (quoting *United States v. Fuchs*, 218 F.3d 957, 965 (9th Cir. 2000)) (internal quotation marks omitted). Thus, where the defendant's knowledge is contested, we have "emphasized that the government must prove a logical connection between the knowledge gained as a result of the commission of the prior act and the knowledge at issue in the charged act." *United States v. Ramos-Atondo*, 732 F.3d 1113, 1123 (9th Cir. 2013) (quoting *United States v. Mayans*, 17 F.3d 1174, 1181–82 (9th Cir. 1994)) (internal quotation marks omitted). This logical connection must be "supported by some propensity-free chain of reasoning." *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (en banc).

We conclude the government established the logical connection between the 2005 conviction and the charged offense. *Id.* Someone's use of fraudulent immigration stamps is admittedly different in some respects from an imposter's use of another person's border crossing card. Nevertheless, the prior offense was sufficiently similar to provide a "logical connection" between knowledge that aliens enter the United States using false documents and knowledge that the alien's border crossing card might not be real or might not belong to him. *See Ramos-Atondo*, 732 F.3d at 1123.

Rodriguez does not dispute that the other requirements for admitting this Rule 404(b) evidence were satisfied, and we conclude that they were. *See, e.g.*, *Lloyd*, 807 F.3d at 1157–58. What she does argue is that evidence of her 2005 conviction was more prejudicial than probative, so that it should have been excluded pursuant to Rule 403. *Id.* (noting that, to be admissible, the probative value of Rule 404(b) evidence must not be substantially outweighed by the danger of unfair prejudice). Rodriguez argues that the prior conviction evidence was only marginally probative, while the risk of prejudice was great. We disagree. First, we conclude the evidence was substantially probative, not merely marginally so, for the reasons stated above. Second, the district court gave an adequate limiting instruction to reduce the danger of unfair prejudice. *Ramos-Atondo*, 732 F.3d at 1124 (holding that a limiting instruction minimized the "practical prejudice" of Rule 404(b) evidence).

The evidence was properly admitted.

### *4. Other alleged errors*

Rodriguez also argues the cumulative effect of the district court's trial errors deprived her of a fair trial. We will not consider the cumulative effect of alleged errors, because at least one error requires reversal. *See United States v. Cazares*, 788 F.3d 956, 990 (9th Cir. 2015) (considering the cumulative effect of multiple trial errors when no single error in isolation was sufficient to warrant reversal).

Rodriguez also challenges her conviction because a juror was improperly dismissed and the *Allen* charge the district court gave the deadlocked jury was coercive. Because these two alleged errors are not likely to arise again on any retrial, we will not address them. *See Alvirez*, 831 F.3d at 1118 (addressing additional issues after finding one ground for reversal, because they were likely to arise again in the event of a retrial). We also decline to address Rodriguez's challenge to an enhancement to her sentence, given that we are reversing her conviction. *See United States v. Bland*, 908 F.2d 471, 472 (9th Cir. 1990) ("We do not reach [defendant's] arguments regarding the legality of his sentence because we conclude that his conviction should be reversed and he should be granted a new trial.").

### III.  CONCLUSION

Rodriguez is entitled to reversal on the basis of two of her challenges to her convictions. The district court's instruction to the jurors defining "reckless disregard" was incorrect. The district court also improperly admitted the passenger's videotaped deposition, because the government made an insufficient showing that the passenger was

"unavailable," where the government's efforts to secure his presence were not reasonable.

**REVERSED.**