**NOT FOR PUBLICATION**

**FILED**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

APR 19 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-30180 |
| Plaintiff-Appellee, | D.C. No. 6:17-cr-00237-MC-2 |
| v. | |
| THOMAS GERARD MAUTONE, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Oregon
Michael J. McShane, District Judge, Presiding

Argued and Submitted April 5, 2024
Portland, Oregon

Before: OWENS and FRIEDLAND, Circuit Judges, and RAYES,** District Judge.

Thomas Mautone appeals from his jury conviction and sentence for four counts of wire fraud, in violation of 18 U.S.C. § 1343, arising from a fraudulent investment scheme. As the parties are familiar with the facts, we do not recount them here. We affirm.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\** The Honorable Douglas L. Rayes, United States District Judge for the District of Arizona, sitting by designation.

1. There is sufficient evidence to support Mautone's convictions. "There is sufficient evidence to support a conviction if, reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Shih*, 73 F.4th 1077, 1100 (9th Cir. 2023) (citation omitted).

Mautone argues that there is insufficient evidence that he had the requisite intent to defraud for all of his wire fraud convictions. For the specific intent for wire fraud, the defendant must intend to both "deceive *and* cheat" his victim. *United States v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020). However, wire fraud does not require "an intent to *permanently* deprive the victim of property." *Id.* at 1103 n.10. Here, a rational trier of fact could have found that Mautone intended to deprive the victim of his money "at least momentarily." *Id.*

For Count 7, Mautone also argues that there was insufficient evidence to hold him vicariously liable for an email sent by one of his co-schemers that lied to the victim about what happened to his money. A rational trier of fact could have found that such an email was an inevitable consequence of the scheme and that Mautone was still participating in the scheme at the time of the email. *See United States v. Stapleton*, 293 F.3d 1111, 1117 (9th Cir. 2002) (stating that "[t]he acts for which a defendant is vicariously liable must have occurred during the defendant's knowing participation or must be an inevitable consequence of actions taken while

2

the defendant was a knowing participant").

2. Mautone's challenge to the district court's admission of evidence of his prior wire fraud conviction fails. Mautone was previously convicted, via guilty plea, of wire fraud in violation of 18 U.S.C. § 1343 related to a purportedly risk-free high-yield investment scheme.

"We review the district court's '[e]videntiary rulings admitting evidence of other acts under Federal Rule of Evidence 404(b) . . . for an abuse of discretion,' although we review whether such evidence is relevant to the crime charged de novo." *United States v. Jimenez-Chaidez*, 96 F.4th 1257, 1264 (9th Cir. 2024) (alterations in original) (quoting *United States v. Rodriguez*, 880 F.3d 1151, 1167 (9th Cir. 2018)).

"Courts may not admit evidence of a defendant's prior acts to suggest that the defendant is more likely guilty of the charged crime because of his past behavior (i.e., the 'propensity inference')." *Id.* (citing Fed. R. Evid. 404(b)(1)). "But the same evidence may be admissible for other purposes, including to prove knowledge and intent." *Id.* (citing Fed. R. Evid. 404(b)(2)).

"To admit evidence of prior acts, courts proceed in two steps. First, the court determines whether the prior-act evidence is admissible for a proper purpose under Rule 404(b)(2)." *Id.* "Second, if the evidence is admissible for a non-propensity purpose, the court determines whether the evidence nonetheless should

3

be excluded under Rule 403 as unduly prejudicial." *Id.*

"Prior-acts evidence must satisfy four requirements to be admissible under Rule 404(b)(2): (1) it must tend to prove a material issue; (2) the prior acts must not be too remote in time; (3) there must be sufficient evidence for a reasonable jury to conclude that the defendant committed the prior acts; and (4) when used to show knowledge and intent, the prior acts must be sufficiently similar to the charged offense." *Id.*

The second and third requirements are easily satisfied here. Mautone's prior conviction occurred less than three years before the charged conduct in the instant case. And given that the government introduced evidence of Mautone's indictment and judgment for the prior conviction, the jury could reasonably conclude that Mautone committed the prior wire fraud.

"To satisfy the first and fourth requirements (relevance and similarity), we have emphasized that the government must show a 'logical connection' between the defendant's knowledge obtained from commission of the prior acts and the knowledge at issue in the current case." *Id.* at 1265 (quoting *Rodriguez*, 880 F.3d at 1167). "The logical connection must be supported by some propensity-free chain of reasoning." *Id.* (internal quotation marks omitted) (quoting *Rodriguez*, 880 F.3d at 1168).

As to the first requirement, Mautone's prior conviction is relevant to show

4

his intent, knowledge, and lack of mistake in defrauding the victim, which Mautone disputed at trial. Mautone's previous conviction for wire fraud related to a purportedly risk-free high-yield investment scheme tends to belie his assertion that he did not understand the spurious nature of the purportedly risk-free high-yield investment scheme for which he was being prosecuted. In other words, the fact that Mautone had been previously convicted for engaging in similar fraud makes it more likely that he would recognize another such fraud. Based on his own past experiences, he would be more suspicious and have greater knowledge to recognize the common features of these purportedly risk-free high-yield investment schemes. Therefore, it is less likely that he would be fooled by the type of fraudulent investment scheme that he previously used to fool others. Thus, Mautone's prior conviction made his knowledge that the instant scheme was fraudulent more probable, and therefore his prior conviction is relevant.

Mautone's prior conviction is also sufficiently similar to his charged conduct to satisfy the fourth requirement. Like the offense charged, Mautone's prior conviction involved wire fraud under 18 U.S.C. § 1343 related to a purportedly risk-free high-yield investment scheme. That the mens rea for Mautone's prior conviction was not identical to the offense charged does not make the prior conviction dissimilar. *See United States v. Evans*, 796 F.2d 264, 265 (9th Cir. 1986) (per curiam) (affirming the admission of prior convictions under Rule 404(b)

5

in part because "the intent required in the prior crimes was *similar* to the intent required under the present charges" (emphasis added)).

Thus, the "logical connection" between Mautone's prior wire fraud conviction and the charged wire fraud "does not require propensity reasoning to establish knowledge and intent," and the district court did not err under Rule 404(b)(2). *Jimenez-Chaidez*, 96 F.4th at 1265.

Nor did the district court abuse its discretion in determining that, under Rule 403, the probative value of Mautone's prior conviction outweighed the prejudice. Moreover, the district court gave clear limiting instructions which lessened any prejudice, emphasizing that the prior conviction bore only "on intent, knowledge, or lack of mistake and for no other purpose."

Further, even if the district court erred by admitting Mautone's prior conviction, any error was harmless. *See United States v. Carpenter*, 923 F.3d 1172, 1181 (9th Cir. 2019). There was ample other evidence that Mautone knowingly acted with an intent to defraud, including his promises of outlandish rates of return, his false statements that the investment was already generating such returns for others, and his efforts to keep the victim from giving details about the supposed investment to bank employees (who likely would have recognized the investment as a fraud).

3. The district court did not abuse its discretion by denying Mautone's

request for a continuance on the first day of trial to visit his mother, who was on end-of-life care and then died in the middle of the five-day trial. *See Bearchild v. Cobban*, 947 F.3d 1130, 1138 (9th Cir. 2020). To evaluate the denial of a continuance, we apply four factors first outlined in *Flynt*: (1) "the movant's diligence in preparing for trial"; (2) "whether a continuance would have achieved the movant's purpose"; (3) "the inconvenience of a continuance to the court and non-moving party"; and (4) "any resulting prejudice the movant may have suffered as a result of the denial." *Id.* (citing *United States v. Flynt*, 756 F.2d 1352, 1359 (9th Cir. 1985)).

"Although we may assign varying weight to the first three of these factors depending on the circumstances, the last factor—prejudice resulting from the denial—is required before error will be assigned to the failure to grant a continuance." *Id.* For prejudice, the focus is on the "extent to which the aggrieved party's right to present his defense has been affected." *United States v. Kloehn*, 620 F.3d 1122, 1128 (9th Cir. 2010) (citation omitted).

Mautone fails to show that he was prejudiced by the denial of a continuance. Mautone did not testify in his own defense, but he contends that the denial of a continuance prevented him from making an intelligent decision whether to testify because he was too distraught. However, the record does not show that Mautone's mother's end-of-life care and death affected his right to present his defense.

7

Mautone did not testify and there is no indication in the record that he was considering doing so. Given that, had Mautone testified, he could have been impeached with more details of his prior fraud conviction, we decline to speculate that he was seriously considering testifying.

The instant case therefore differs significantly from *Kloehn*, where we held that the district court abused its discretion by denying the defendant's request to continue his trial for two days to allow him to see his dying son. *Id.* at 1125. The record there showed that the defendant was prejudiced because he was in the middle of testifying in his own defense when he unsuccessfully requested a continuance, and defense counsel stated on the record that the defendant's "overwhelming concern about his son's condition prevented him from preparing his testimony the night before the final day on which he was to testify, and left him distracted and unable to concentrate during the testimony itself." *Id.* at 1129.

4. Finally, Mautone's sentence is not procedurally or substantively unreasonable. "In the sentencing context, '[w]e review the district court's factual findings for clear error, its construction of the United States Sentencing Guidelines de novo, and its application of the Guidelines to the facts for abuse of discretion.'" *United States v. Halamek*, 5 F.4th 1081, 1087 (9th Cir. 2021) (alteration in original) (citation omitted).

8

Mautone challenges the district court's denial of a reduction in his offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a). However, the district court did not clearly err in finding that Mautone had not accepted responsibility because Mautone would not acknowledge that he lied to get the victim to invest his money. *See United States v. Luong*, 965 F.3d 973, 990-91 (9th Cir. 2020). Contrary to Mautone's contention, the court did not decline the reduction merely because he had exercised his constitutional right to go to trial. *See id.* at 991.

Mautone also challenges the court's imposing an enhancement because the offense "resulted in substantial financial hardship" to the victim. U.S.S.G. § 2B1.1(b)(2)(A)(iii). But, Mautone fails to show that the court abused its discretion. The victim stated that, due to his investment loss, he had to sell his house, and he and his wife had to work past the age they planned to retire. *See id.* § 2B1.1 cmt. n.4(F).

In addition, Mautone faults the court for giving him a two-level, rather than a three-level, minor-role reduction in his offense level. *See id.* § 3B1.2. Again, Mautone fails to show that the court abused its discretion. The court noted that Mautone had a more significant role than his co-defendants because he had already been involved in a similar scheme and he applied more pressure on the victim.

Lastly, Mautone's thirty-month sentence, far below his Guidelines range, was substantively reasonable. *See* 18 U.S.C. § 3553(a); *United States v. Wilson*, 8 F.4th 970, 977-78 (9th Cir. 2021) (per curiam).

**AFFIRMED**.